IN THE UNITED STATES DISTRICT COURT

FOR THE SOURTHERN DISTRICT OF TEXAS

LAREDO DIVISION

United States Courts
Southern District of Texas
FILED

SEP 1 1 2018   DMG

David J. Bradley, Clerk
Laredo Division

---

PETITION FOR WRIT OF HABEAS CORPUS BY

A PERSON IN STATE CUSTODY

---

MICHAEL WILFRED LAFLAMME
PETITIONER

V.

LORIE DAVIS,DIRECTOR
RESPONDANT

---

APPENDIX

TAB-A,B,C,D,E,F

## APPENDIX

TAB "A" OPINION OF FOURTH COURT OF APPEALS

Neutral
As of: July 10, 2018 6:00 PM Z

# *Laflamme v. State*

Court of Appeals of Texas, Fourth District, San Antonio

June 14, 2017, Delivered; June 14, 2017, Filed

No. 04-15-00806-CR

**Reporter**

2017 Tex. App. LEXIS 5393 *; 2017 WL 2561582

Michael Wilfred LAFLAMME, Appellant v. The STATE of Texas, Appellee

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Subsequent History:** Petition for discretionary review refused by *In re LaFlamme, 2018 Tex. Crim. App. LEXIS 283 (Tex. Crim. App., Feb. 7, 2018)*

**Prior History: [*1]** From the 406th Judicial District Court, Webb County, Texas. Trial Court No. 2013CRW160-D4. Honorable Oscar J. Hale, Jr., Judge Presiding.

**Disposition:** AFFIRMED.

## Core Terms

trial court, judicial notice, notice, juror, peremptory, contends, sentencing, documents, Exhibits, arrests, pet, punishment phase, unadjudicated, introducing evidence, prior conviction, photographs, overrule, stand-by, asserts, records, strikes, seated

**Counsel:** For APPELLANT: Michael Wilfred Laflamme #2045009, String Fellow Unit, Rosharon, TX.

For APPELLEE: David L. Reuthinger, Jr., Webb County District Attorney's Office, Laredo, TX.

**Judges:** Opinion by: Irene Rios, Justice. Sitting: Sandee Bryan Marion, Chief Justice, Karen Angelini, Justice, Irene Rios, Justice.

**Opinion by:** Irene Rios

## Opinion

**MEMORANDUM OPINION**

AFFIRMED

### BACKGROUND

This appeal arises from Michael LaFlamme's jury conviction of intoxication assault with a deadly weapon. The underlying incident occurred on November 3, 2011, when LaFlamme struck Edna Gonzalez with his vehicle as she took her morning walk. Although LaFlamme was detained at the scene, he was not arrested until a few days later when a toxicology test returned positive for the presence of morphine and benzoylecgonine, a cocaine metabolite. Following a jury trial in which LaFlamme elected to represent himself, he was convicted and sentenced to sixteen years' imprisonment.[1]

### ANALYSIS

### Issue One: Admission of Emergency Room Photographs into Evidence During Punishment

LaFlamme asserts the trial court erred by admitting **[*2]** Exhibits 37 and 38 during sentencing because the photographs in these exhibits were not relevant and were unduly prejudicial.

Gonzalez's sister, Diana Escamilla, testified during the sentencing phase. During her testimony, the State admitted Exhibits 37 and 38, which were photographs of Gonzalez while in the hospital after receiving medical treatment and surgery. LaFlamme did not object to admission of these photographs. He asserts on appeal the trial court should have "sua sponte rejected the

---

[1] LaFlamme's sentence was enhanced because of prior convictions.

photographs as irrelevant and highly prejudicial."

To preserve error regarding the admission of evidence, a defendant must present a timely and specific objection even if any erroneous admission implicates a constitutional right. _Tex. R. App. P. 33.1_; _Saldano v. State, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002)_; _Martinez v. State, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000)_.

Because LaFlamme did not object to admission of Exhibits 37 and 38, he has not preserved for appellate review any complaint that the trial court erroneously admitted these exhibits. We, therefore, overrule LaFlamme's first issue.

### Issue Two: Judicial Notice of Prior Convictions During Punishment

In his second issue on appeal, LaFlamme challenges the trial court's decision during sentencing to take judicial notice of two documents. His challenge is twofold. First, LaFlamme **[*3]** contends the trial court erred by taking judicial notice of two documents as certified judgments of two prior convictions because his prior criminal history is not a fact of which a court may take judicial notice and because the trial court lacked the power to take judicial notice of the conviction records of other courts. Second, LaFlamme contends that because the trial court erred by taking judicial notice of his prior convictions, the judgments were erroneously admitted and improperly used to enhance his sentence.

#### Standard of Review

A trial court may take judicial notice of an adjudicative fact that is not subject to reasonable dispute "because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." _Tex. R. Evid. 201_; _Freedom Commc'ns, Inc. v. Coronado, 372 S.W.3d 621, 623 (Tex. 2012)_. Upon taking judicial notice of adjudicative facts, the trial court authorizes the fact-finder to accept the truth or existence of those specific facts without requiring formal proof. _Watts v. State, 99 S.W.3d 604, 609-10 (Tex. Crim. App. 2003)_. Adjudicative facts which may be judicially noticed are those relevant to the ultimate issue in dispute, but are not themselves the subject of any controversy. _Id. at 610_. "Under this **[*4]** standard, a court will take judicial notice of another

court's records if a party provides proof of the records," such as proper authentication or certification. _Ex parte Wilson, 224 S.W.3d 860, 863 (Tex. App.—Texarkana 2007, no pet.)_ ("Judicial records ... from a domestic court other than the court being asked to take judicial notice ... are to be established by introducing into evidence authenticated or certified copies ... of those records."); _Perez v. Williams, 474 S.W.3d 408, 419 (Tex. App.—Houston [1st Dist.] 2015, no pet.)_. A trial court's action in taking judicial notice is reviewed for an abuse of discretion. _In Matter of Estate of Downing, 461 S.W.3d 231, 239 (Tex. App.—El Paso 2015, no pet.)_; _Keller v. Walker, 652 S.W.2d 542, 543 (Tex. App.—Dallas 1983, no writ)_.

During the sentencing phase of trial, the State requested the trial court "take judicial notice of two certified judgments." Over LaFlamme's objection, the trial court took judicial notice and admitted State's Exhibits 35 and 36. The trial court specifically limited its judicial notice to the fact that the exhibits were "certified documents", thereby obviating the State's need to authenticate them. _See Ex parte Wilson, 224 S.W.3d at 863_; _Perez, 474 S.W.3d at 419_. Although the trial court did not preside over the prior convictions, it did have the discretion to take judicial notice the documents presented were certified documents. _See Ex parte Wilson, 224 S.W.3d at 863_; _Perez, 474 S.W.3d at 419_. The State elicited testimony from Officer San Miguel of the Laredo Police Department that each of the certified documents were judgments **[*5]** of conviction of a Michael Wilfred LaFlamme. Thereby, the State presented evidence from which the jury could link the two certified judgments of the previous convictions with Michael Wilfred LaFlamme, the defendant in the case before them.

After reviewing the record, we conclude the trial court did not err by taking judicial notice that the documents were certified and admitting the documents into evidence.

We overrule LaFlamme's second issue.

### Issue Three: Notice of State's Attempt to Introduce Evidence of Unadjudicated Arrests During the Punishment Phase

In his third issue, LaFlamme does not challenge specific trial court error but instead contends the State committed error by neglecting "a continuous duty to provide the necessary notice to [LaFlamme]" of its intent

to use "extraneous bad acts" during the punishment phase. Construing LaFlamme's brief broadly, it appears LaFlamme argues his due process rights were violated because the State failed to provide him with notice required under *Texas Rule of Evidence 404(b)* of its intent to present evidence of unadjudicated arrests during the punishment phase.[2]

The record reflects that during the punishment phase of trial, the State attempted to introduce [*6] evidence of LaFlamme's previous unadjudicated arrests. LaFlamme objected and discussion ensued whether the State had provided LaFlamme the notice required by *Rule of Evidence 404(b)*. The trial court determined notice had been given to previous attorneys who represented LaFlamme in a prior trial and during the present litigation; however, the notice was not provided to LaFlamme when he waived representation and elected to proceed *pro se*. The trial court sustained LaFlamme's objection and excluded evidence of unadjudicated arrests.

Because the trial court sustained LaFlamme's objection to the State's failure to provide any notice of its intent to introduce evidence of prior unadjudicated arrests and excluded the evidence, LaFlamme presents no trial-court error for this court's review. See *Badall v. State, 216 S.W.3d 865, 872 (Tex. App.—Beaumont. pet. ref'd)* (holding appellant failed to preserve issue for review when his objections were sustained, and he requested no further relief).

We overrule LaFlamme's third issue.

**Issue Four: Assistance of Stand-By Counsel During Trial**

It is undisputed that prior to trial LaFlamme waived counsel and was allowed to proceed *pro se*. It is also undisputed the trial court dismissed court-appointed counsel Eduardo Castillo but required him to remain [*7] in the courtroom for the sole purpose of being ready should LaFlamme decide to proceed with counsel. The trial court designated Mr. Castillo as "stand-by counsel." LaFlamme concedes the trial court provided adequate admonitory instructions about proceeding *pro se* and unequivocally and clearly expressed the purpose of standby counsel's presence at trial — to represent Mr. LaFlamme should he choose to no longer represent himself.

In this issue on appeal, LaFlamme contends that after these instructions, the trial court then questioned Mr. Castillo regarding the *Rule 404(b)* notice he received from the State and also "allowed Mr. Castillo to aid [LaFlamme] by calling defense witnesses," yet prevented Mr. Castillo from assisting LaFlamme during trial. LaFlamme argues "[t]his inconsistency of the presence and purpose of stand-by counsel, created confusion and inadequacy on the part of Mr. LaFlamme, and interfered with both his right to counsel and the right to represent himself, resulting in a denial of due process. Indeed, by allowing and then disallowing assistance of stand-by counsel, the trial court undermined the efficacy of the entire trial itself." Finally, LaFlamme asserts "[t]his scenario denied [him] due [*8] process and his right to a fair trial by conflagrating his right to counsel and his right to represent himself."

With regard to the two incidents that LaFlamme contends created inconsistency and confusion, review of the record reveals that during LaFlamme's case in chief, he requested to call as a witness the emergency room nurse; however, he was not able to ascertain whether she had been served to appear. Because LaFlamme was in custody and was not allowed to leave the courtroom, the trial court requested Mr. Castillo's assistance to go into the hall to see if the witness was waiting or to call her to ascertain whether she had been served to appear as a witness. At that time, the trial court stated, "I'm not asking you to take an active role other than looking into the whereabouts of Ms. Viridiana Garza and informing her that there's a subpoena that she has not been served yet. But if you can see about her availability today, if you could look into that for us." Mr. Castillo assisted the trial court as requested and eventually located the witness who agreed to come testify. LaFlamme did not object to the trial court's request for assistance.

---

[2] *Article 37.07(3)(g) of the Code of Criminal Procedure—rather* than *Rule of Evidence 404(b)*—governs the admissibility of extraneous-offense evidence during the punishment phase of trial. Compare *Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g)* (West Supp. 2016) (relating to evidence introduced during punishment phase of trial); *Tex. R. Evid. 404(b)* (relating to evidence introduced during guilt phase of trial); *see also Ramirez v. State, 967 S.W.2d 919, 923 (Tex. App.— Beaumont 1998, no pet.)* (*Rule 404(b)* does not apply to evidence that State intends to introduce only during punishment). Because *article 37.07, § (3)(g)* requires notice in the same manner as *Rule 404(b)*, we will liberally construe LaFlamme's brief as reference to *article 37.07*. See *Francis v. State, 445 S.W.3d 307, 318 (Tex. App.—Houston [1st Dist.] 2013)*, aff'd, *428 S.W.3d 850 (Tex. Crim. App. 2014)*.

Next, during the sentencing phase of trial, [*9] a bench conference ensued regarding whether LaFlamme received the State's notice of its intent to present testimony of unadjudicated arrests. The trial court called Mr. Castillo to the bench to inquire whether he had received the notice and whether it had been forwarded to LaFlamme. Based upon Mr. Castillo's answers, the trial court sustained LaFlamme's objection. LaFlamme did not object to the trial court's inquiry of Mr. Castillo.

We conclude LaFlamme's argument must fail because review of the record reveals Mr. Castillo did not represent LaFlamme at trial, but only assisted the trial court in the facilitation of the proceedings out of the presence of the jury. Mr. Castillo's discussion during a bench conference was to assist the trial court in understanding what occurred while Mr. Castillo was LaFlamme's counsel and to clarify confusion. Mr. Castillo's assistance in finding a witness was simply to facilitate the trial process and was done with the trial court's clear instruction that Mr. Castillo was not actively participating in the trial process. Because Mr. Castillo's assistance did not constitute representation of LaFlamme, his assistance could not have "denied Mr. LaFlamme due [*10] process and his right to fair trial by conflagrating his rights to counsel and his right to represent himself."

In any event, were it error for the trial court to request Castillo's assistance, LaFlamme failed to show harm. Following Mr. Castillo's explanation regarding the _Rule 404(b)_ notice, the trial court sustained LaFlamme's objection. Following Mr. Castillo's assistance in locating LaFlamme's witness, she appeared in court and testified.

To the extent LaFlamme contends the trial court erred by refusing his request for Mr. Castillo's assistance during trial, a denial of his _Fifth Amendment_ right to counsel, review of the record reveals LaFlamme never requested Mr. Castillo's assistance, nor did he ever indicate he no longer wanted to represent himself. LaFlamme concedes he never withdrew his waiver of counsel and never invoked his right to have Mr. Castillo assume representation or assist in representation.

To the extent LaFlamme contends the trial court erred by denying his _Sixth Amendment_ right to self representation or by appointing stand by counsel or by requesting that Mr. Castillo assist LaFlamme, review of the record dispels this construed argument. Also, at no time did LaFlamme object to Mr. Castillo's assistance.

[*11] For these reasons, we overrule LaFlamme's

fourth issue.

### Issue Five: Trial Court's Failure to _Sua Sponte_ Remove a Jury Member whom LaFlamme Neglected to Strike

LaFlamme contends the trial court erred by refusing to allow him to use one of his peremptory challenges to strike a jury member after the jury was seated and by failing to _sua sponte_ remove the jury member. LaFlamme asserts he made clear to the judge that he intended to strike the subject juror; however, he mistakenly failed to do so. Therefore, LaFlamme contends the trial court committed harmful error by not allowing him to use a peremptory strike after he turned in his strike sheet.

The record reveals that after the voir dire examination, each side submitted to the court its list of peremptory strikes, and the court clerk announced the names of the twelve jurors. Once the jurors were seated in the jury box, but before they were sworn, LaFlamme objected to a specific juror's placement on the jury, stating he had stricken this juror. The trial court reviewed the peremptory strikes of both parties and proclaimed that LaFlamme had exercised only seven of his ten peremptory strikes and did not strike the subject juror. Because LaFlamme [*12] had not exercised a peremptory strike on the subject juror, the trial judge denied LaFlamme's request to utilize a peremptory strike after the strike sheets were turned in and the jury was seated.

Each party must assure that the jury does not include a juror that was stricken. _Truong v. State, 782 S.W.2d 904, 905 (Tex. App.—-Houston [14th Dist.] 1989, pet. ref'd)_. If such error is called to the trial court's attention before the jury is sworn, and the error is not cured, automatic reversal is required. _Pogue v. State, 553 S.W.2d 368, 370-71 (Tex. Crim. App. 1977)_. However, when a party presents no documentation or otherwise shows a mistake occurred, the party's mere assertion of mistake does not compel correction of the alleged error. _Jackson v. State, 826 S.W.2d 751, 751-52 (Tex. App.— Houston [14th Dist.] 1992, pet. ref'd)_. It is inequitable to allow a party to alter his peremptory strikes by merely making an assertion or claim of mistake, unsupported by anything in the record, after having seen the other party's strikes. _Id._

As in _Jackson v. State_, the record before the trial court and before this Court presents no evidence of a mistake

in the exercise of LaFlamme's peremptory challenges or in the trial court's seating of the jury members. Other than LaFlamme's mere assertions that he intended to strike, or made a mistake in failing to strike the subject juror, nothing in the record supports this claim. Therefore, **[*13]** the trial court did not err by failing to *sua sponte* remove the subject juror or by denying LaFlamme's request to exercise a peremptory strike on the subject juror after the jury was seated, but before it was sworn. See *Jackson, 826 S.W.2d at 751-52*.

We overrule LaFlamme's fifth issue.

### CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Irene Rios, Justice

DO NOT PUBLISH

End of Document

## APPENDIX

**TAB "B" JUROR QUESTIONNAIRE CARDS ADDRESSED IN GROUND ONE**

TAB-B.1  Juror #5 Martha Lidia Rodriguez,sister of Officer Marco A.Rodriguez who served as lead investigator in the present and Martha signed petitioner's guilty verdict and she is married to police officer Michael Johannes,and she listed her rece as white.

TAB-B.2  Juror #6 Carlos Adan,Laredo Police Officer.

TAB-B.3  Juror #10 Maria Luz Manrique who is the wife of Stste witness Jose Luis Manrique testified at both trials as DRE. Also Maria listed her race as white in juror card.

TAB-B.4  Juror #9 Alfredo M.Vidaurri,employed with Department Of Homeland Security.

TAB-B.5  Juror #11 Irma Laura Davila she is married to retired Laredo Police officer Jose Davila Jr. Also listed her race as white.

TAB-B.6  Abelardo Rodriguez,listed his race as white, and he claims to be a lock smith for 3 yrs. However Mr.Rodriguez is 57 yrs. old thus one could logically surmise that he is retired from possibly the LPD and he too listed his race as white when all these jurors are clearly hispanic or of Latin origins. Did they misrepresent themselves?

TAB-B.7  "GUILTY" Verdict Signed By Martha Lidia Rodriguez/Evidence Tag Signed By Officer Marco Rodriguez on Day Of Accident 11/03/11 Signitures look exactly alike.

Tab-B.1

*[Handwritten note on left margin:]* Juror #5 Sister of Officer Marco A. Rodriguez who served as the lead investigator.

**JUROR QUESTIONNAIRE**   **PLEASE TYPE OR PRINT IN INK ONLY**
R QUESTIONNAIRE" IS MANDATED BY GOVERNMENT CODE, SECTION 62.0132.
*Your answers are CONFIDENTIAL and may be disclosed only to the judge, court personnel, litigant and the litigant's attorney.*

☐ Male ☑ Female | (Required by State Law) Race White | Age: 28 | Date of Birth: 8 3 87 | Are you a U.S. Citizen ☑ Y ☐ N

Your Name: Home Address: **MARTHA LIDIA RODRIGUEZ**
208 ASTURIAS AVE
LAREDO, TX 78046-8502
147562
R-15DEC07-406

**Current Marital Status**
☐ Single ☑ Married
☐ Widowed ☐ Divorced
Number of Children 0
Ranges of Age:
From _____ years to _____ years

Mailing Address (if different from home): 208 Asturias

Primary Phone: 956-645-0700 | Alternate Phone: | County of Residence: Webb

Your Occupation: Legal Secretary | Work Phone: 956-712-1400
Your Employer: Kazen Meurer & Perez | How Long? 8 months
Spouse's Name: Michael Johannes | Spouse's Occupation: Police Officer
Spouse's Employer: TAMIU | How Long? 10 months

**Please check highest level of education completed:**
☐ Did not receive H.S. Diploma
☐ H.S. Diploma
☐ GED
☐ 2 yr College
☑ 4 yr College
☐ Post Graduate
☐ Other _____

Have you ever served on a civil jury? ☐ Y ☑ N | Have you ever served on a criminal jury? ☐ Y ☑ N

I CERTIFY THAT ALL ANSWERS ARE TRUE AND CORRECT.
Please sign here → *Martha Johannes*   Date 12/7/15

NOTE: If you state that you are not a U.S. citizen, you will no longer be eligible to vote if you fail to provide proof of U.S. citizenship to your county voter registrar.

**THIS FORM MUST BE COMPLETED AND BROUGHT WITH YOU WHEN REPORTING FOR JURY DUTY.**

---

Tab-B.2

*[Handwritten note on left margin:]* Juror #6 → Works for the same police Dpt. as all the officers that testified at my trial.

**JUROR QUESTIONNAIRE**   **PLEASE TYPE OR PRINT IN INK ONLY**
THE FOLLOWING "JUROR QUESTIONNAIRE" IS MANDATED BY GOVERNMENT CODE, SECTION 62.0132.
*Your answers are CONFIDENTIAL and may be disclosed only to the judge, court personnel, litigant and the litigant's attorney.*

☑ Male ☐ Female | (Required by State Law) Race Hispanic | Age: 45 | Date of Birth: 8 24 70 | Are you a U.S. Citizen ☑ Y ☐ N

Your Name: Home Address: **CARLOS ADAN**
2105 SNOW FALLS DR
LAREDO, TX 78045-8369
158238
R-15DEC07-406

**Current Marital Status**
☑ Single ☐ Married
☐ Widowed ☐ Divorced
Number of Children 7
Ranges of Age:
From 25 years to 5 years

Mailing Address (if different from home):

Primary Phone: 956 286 8203 | Alternate Phone: | County of Residence: WEBB

Your Occupation: City of Laredo Police | Work Phone: 956 795-2850
Your Employer: City of Laredo | How Long? 25 years
Spouse's Name: Jessica Morales | Spouse's Occupation: Fleet Mgt
Spouse's Employer: U.S. Border Patrol | How Long? 8 yrs

**Please check highest level of education completed:**
☐ Did not receive H.S. Diploma
☐ H.S. Diploma
☐ GED
☑ 2 yr College
☐ 4 yr College
☐ Post Graduate
☐ Other _____

Have you ever served on a civil jury? ☑ Y ☐ N | Have you ever served on a criminal jury? ☑ Y ☐ N

I CERTIFY THAT ALL ANSWERS ARE TRUE AND CORRECT.
Please sign here → *[signature]*   Date 12.7.15

NOTE: If you state that you are not a U.S. citizen, you will no longer be eligible to vote if you fail to provide proof of U.S. citizenship to your county voter registrar.

**THIS FORM MUST BE COMPLETED AND BROUGHT WITH YOU WHEN REPORTING FOR JURY DUTY.**

Tab-B.3

*Juror # 10*

# JUROR QUESTIONNAIRE     PLEASE TYPE OR PRINT IN INK ONLY

THE FOLLOWING "JUROR QUESTIONNAIRE" IS MANDATED BY GOVERNMENT CODE, SECTION 62.0132.

Your answers are CONFIDENTIAL and may be disclosed only to the judge, court personnel, litigants and the litigant's attorney.

| | | | |
|---|---|---|---|
| ☐ Male ☐ Female | Race (Required by State Law)<br>White / Hispanic | Age:<br>42 | Date of Birth:<br>11 / 21 / 73 |

Your Name: **MARIA LUZ MANRIQUE**
Home Address: 1928 YUKON LN
LAREDO, TX 78045-9420

211003
R-15DEC07-408

Are you a U.S. Citizen ☑ Y ☐ N
(Please use "Their" below)

Current Marital Status
☐ Single   ☑ Married
☐ Widowed   ☐ Divorced

Number of Children: 3

Ranges of Age:
From 11 years to 16 years

Mailing Address
(if different from home): 1928 Yukon

Primary Phone: (956) 235-5108  Alternate
Phone: (956) 763-5050     Phone: (956) 791-0942  County of
Residence:

Please check highest level of education completed:
☐ Did not receive H.S. Diploma
☐ H.S. Diploma
☐ GED
☑ 2 yr College
☐ 4 yr College
☐ Post Graduate
☐ Other:

Your
Occupation: Occupation / Therapy Assistant     How
Long? 9 yrs.     Work Phone: 956-693-5050

Your
Employer: Providence Hospital     Have you ever served on a civil jury? ☐ Y ☑ N

Spouse's
Name: Concilio Hipolito

Spouse's
Occupation: LVN     How
Long? 20 yrs.     Have you ever served on a criminal jury? ☐ Y ☑ N

Spouse's
Employer: Jose L. Manrique

*State witness who testified at both trials*

I CERTIFY THAT ALL ANSWERS ARE TRUE AND CORRECT.
Please sign here → **[signature]**     Date: 11/25/15

NOTE: If you state that you are not a U.S. citizen, you will no longer be eligible to vote if you fail to provide proof of U.S. citizenship to your county voter registrar.

THIS FORM MUST BE COMPLETED AND BROUGHT WITH YOU WHEN REPORTING FOR JURY DUTY.

Tab-B.4

June #9

## JUROR QUESTIONNAIRE

**PLEASE TYPE OR PRINT IN INK ONLY**

THE FOLLOWING "JUROR QUESTIONNAIRE" IS MANDATED BY GOVERNMENT CODE, SECTION 62.0132.
Your answers are CONFIDENTIAL and may be disclosed only to the judge, court personnel, litigant and the litigant's attorney.

| | |
|---|---|
| ☐ Male ☐ Female | (Required by State Law) *[signature]* |

**Your Name:** ALFREDO M VIDAURRI
**Home Address:** 815 CARROL DR
LAREDO, TX 78045-2043

**Age:** 61   **Date of Birth:** 01-06-54   Are you a U.S. Citizen ☐ Y ☐ N

207260
R-15DEC07-408

**Current Marital Status**
☐ Single  ☐ Married
☐ Widowed  ☐ Divorced

**Number of Children:** 3
**Ranges of Age:** From 15 years to 9 years

**Mailing Address** (if different from home):

**Primary Phone:** 956-369-5776   **Alternate Phone:** 956-794-5321   **County of Residence:** Webb

**Your Occupation:** U.S. Customs   **Work Phone:** 956-643-5753

Please check highest level of education completed:
☐ Did not receive H.S. Diploma
☐ H.S. Diploma
☐ GED
☐ 2 yr College
☐ 4 yr College
☐ Post Graduate
☐ Other

**Your Employer:** Dept. Homeland Security   **How Long:** 36 yrs

**Spouse's Name:** Rosa Vidaurre   **Spouse's Occupation:** housewife

**Spouse's Employer:** housewife   **How Long:** 21 yrs.

Have you ever served on a civil jury? ☐ Y ☑ N   Have you ever served on a criminal jury? ☐ Y ☑ N

I CERTIFY THAT ALL ANSWERS ARE TRUE AND CORRECT.
Please sign here → *[signature]*   **Date:** 12/31/15

NOTE: If you state that you are not a U.S. citizen, you will no longer be eligible to vote if you fail to provide proof of U.S. citizenship to your county voter registrar.

THIS FORM MUST BE COMPLETED AND BROUGHT WITH YOU WHEN REPORTING FOR JURY DUTY.

Tab-B.5

*Juror #11*

*police officer*

# JUROR QUESTIONNAIRE

## PLEASE TYPE OR PRINT IN INK ONLY

THE FOLLOWING "JUROR QUESTIONNAIRE" IS MANDATED BY GOVERNMENT CODE, SECTION 62.0132.

Your answers are CONFIDENTIAL and may be disclosed only to the judge, court personnel, litigant and the litigant's attorney.

☐ Male ☒ Female  [Required by State Law]  Race: W WHITE

Your Name: IRMA LAURA DAVILA

Home Address: 508 E MONTGOMERY ST LAREDO, TX 78040-1433

Age: 5 5

Date of Birth: 06/11/1960

Are you a U S Citizen ☒ Y ☐ N

169228  R-15DEC07-406

Current Marital Status: ☐ Single ☒ Married ☐ Widowed ☐ Divorced

Mailing Address (if different from home):

Number of Children: 0 (Ranges of Age)

Primary Phone: 956  Alternate Phone: 724-8184 (wk)

County of Residence: WEBB

Your Occupation: ACCOUNTANT

Please check highest level of education completed: ☐ Did not receive H.S. Diploma ☐ H.S. Diploma ☐ GED ☒ 2 yr College ☐ 4 yr College ☐ Post Graduate ☐ Other

Your Employer: BERT RODRIGUEZ CPA  How Long? 11 YRS  Work Phone:

Spouse's Name: JOSE DAVILA JR  Spouse's Occupation: RETIRED  How Long? N/A

Have you ever served on a civil jury? ☒ Y ☐ N   Have you ever served on a criminal jury? ☒ Y ☐ N

Spouse's Employer: N/A

I CERTIFY THAT ALL ANSWERS ARE TRUE AND CORRECT.

Please sign here → *Irma L. Davila*  Date: 12/2/15

NOTE: If you state that you are not a U.S. citizen, you will no longer be eligible to vote if you fail to provide proof of U.S. citizenship to your county voter registrar.

THIS FORM MUST BE COMPLETED AND BROUGHT WITH YOU WHEN REPORTING FOR JURY DUTY.

Tab-B.6

Juror #

## JUROR QUESTIONNAIRE    PLEASE TYPE OR PRINT IN INK ONLY

THE FOLLOWING "JUROR QUESTIONNAIRE" IS MANDATED BY GOVERNMENT CODE, SECTION 62.0132.

Your answers are CONFIDENTIAL and may be disclosed only to the judge, court personnel, litigant and the litigant's attorney.

| Your Name: | | Age: 57 | Date of Birth: 8-21-58 | Current Marital Status |
|---|---|---|---|---|
| Home Address: ABELARDO RODRIGUEZ 1639 DENMARK LN LAREDO, TX 78045-8389 | (Required by State Law) Race: White | 141727 R-15DEC017-406 | | ☐ Single    ☒ Married ☐ Widowed    ☐ Divorced |
| Mailing Address (if different from home): | | | | Number of Children: 2 |
| Primary Phone: | Alternate Phone: | | County of Residence: | Ranges of Age: From 3 years to 29 years |
| Your Occupation: Locksmith | | Work Phone: | | Please check highest level of education completed: |
| Your Employer: A & L Locksmith Services | | How Long? 3 yrs. | | ☐ Did not receive H.S. Diploma ☐ H.S. Diploma |
| Spouse's Name: Laura Rodriguez | | | Spouse's Occupation: Sales | ☐ GED ☐ 2 yr College |
| Spouse's Employer: Marshalls | | How Long? 18 | | ☐ 4 yr College ☐ Post Graduate ☐ Other |
| Have you ever served on a civil jury? ☐ Y ☒ N | | | Have you ever served on a criminal jury? ☐ Y ☒ N | |

I CERTIFY THAT ALL ANSWERS ARE TRUE AND CORRECT.
Please sign here → [signature]    Date 12-2-15

NOTE: If you state that you are not a U.S. citizen, you will no longer be eligible to vote if you fail to provide proof of U.S. citizenship to your county voter registrar.

THIS FORM MUST BE COMPLETED AND BROUGHT WITH YOU WHEN REPORTING FOR JURY DUTY.

CAUSE NO. 2013CRM000160D4

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 406TH JUDICIAL DISTRICT |
| | § | |
| MICHAEL WILFRED LAFLAMME | § | WEBB COUNTY, TEXAS |

## VERDICT OF THE JURY

We, the Jury, find the Defendant, MICHAEL WILFRED LAFLAMME,

_____*Guilty*_____ of the offense of INTOXICATION ASSAULT,
"Guilty" or "Not Guilty"

a FELONY 3 offense.

*Martha Rodriguez*
Presiding Juror

*Martha Rodriguez*
(Please Print) Presiding Juror



FILED
WEBB COUNTY, TEXAS
BY _____ DEPUTY
AT _____1:44 P.____ M.
December 16, 20 15
ESTHER DEGOLLADO
CLERK OF THE DIST. COURTS
& COUNTY COURTS AT LAW

A True copy of the original I certify
the ____ day of ____ 20 __
ESTHER DEGOLLADO
Clerk of the District Courts and
County Courts at Law  Webb County, Texas
By _____ Deputy

*Charge of the Court – 2013CRM00160D4*                    Page 7

EXHIBIT
B

MENT OF PUBLIC SAFETY
LABORATORY SERVICE

**Laboratory Submission Form**

DPS Laboratory Use Only

Case #

Case #

**DEFENDANT'S EXHIBIT**
2

Agency Case Number

Offense   Motor

Date of Offense

Company

Address
We cannot deliver to PO boxes or PO ZIP codes.

Address
Use this line for the HOLD location address or for continuation of your shipping address.

2525 ZnTexasTravel Blvd

City   Weslaco

State   TX.   ZIP   78596



FedEx

6552 BOB BULLOCK LOOP
LAREDO, TX 78041

Location:            LRDA
Device ID:       LRDA-POS1
Employee:        467961
Transaction:    77041681903

PRIORITY OVERNIGHT
898758229169      1.00 lb (M)           33.96

Scheduled Delivery Date 01/05/2012

Shipment subtotal:                    33.96

Total Due:                                  33.96

FedEx Account:                         33.96
*****2437

M = Weight entered manually
S = Weight read from scale
T = Taxable item

Subject to additional charges. See FedEx Service Guide
at fedex.com for details. All merchandise sales final.

Visit us at: fedex.com
Or call 1.800.GoFedEx
1.800.463.3339

January 4, 2012 2:49:42 PM

Laredo Police Department

Property/Personnel Use Only    1845

Locker #   519 F.S.

2011- 4808

The Below Listed Property was ☑Seized  ☑Found on this 3 day of March

20 11 at 1034 A.M/P.M. at 700 Sanchez Ave.    78041
                                          LOCATION                    ZIP CODE

☐ OR   ☑ Available for Release
☐ Fus   ☐ Hold

IDENTIFYING NO. (S)

To be held as    ☑ Evidence   ☐ Recovered Stolen Property
☐ Lost or Found Property   ☐ Other   ☐ Wt.

DETAILED DESCRIPTION (ATTACH INVENTORY SHEET IF NEEDED)

1 - blood vials

Charge / Incident    Motor vehicle Accident

Victim's Name   Edna Rios Gnz.    2003 Nissan

Defendants Name/DOB   Michael LaFlamme   5-13-70

Signature of Officer   Maria Rodriguez   9067 3048

Print Name

Victim's Tel. Number

Beat:   13

ID#   Case Number   11-33953

For some non-drug cases, it may be a
Please include brief case synopsis, un

RETAIN THIS COPY FOR YOUR RECORDS.

Are known standards (blood, saliva, hair, inked prints, clothing, fabrics, etc.) submitted for comparison?    ☐ Yes  ☑ No
Have any of these exhibits been previously analyzed by a laboratory?    ☐ Yes ☑ No  If so, What Exhibit #'s?

LAB-06 Rev.00 (11/2002)                                                          Page _____ of _____

## APPENDIX

**TAB C-CASE SUPPLEMENTAL REPORTS ADDRESSED IN GROUND THREE**

### "NO EVIDENCE OF INTOXICATION"

**TAB C.1** Case Supplemental Report made by Marco A.Rodriguez
$7\frac{1}{2}$ months after auto-ped accident hi-lighted where
officer J.R.Gonzalez copied officer Rdz.

**TAB C.2** Case Supplemental Report made by Officer Jesus Robert
Gonzalez almost two yrs. after auto-ped accident Hi-
lighted where he copied M.A.Rdz. report.

**TAB C.3** Case Supplemental repot made by officer Charles Rosales
two yrs. after auto-ped accident,Hi-leghted wher he and
Sgt.Anthony Gomez plagiarized eachother.

**TAB C.4** Case Supplemental Report Created by Sgt.A.Gomez almost
two yrs. after auto-ped accident Hi-lighted where he
and officer C.Rosales inappropriately shered information.
Also where Sgt. Gomez placed F.D.De Hoyos at scene.

**TAB C.5** Case Supplemental report created by Officer F.D.De

Hoyos in which he claimed not to remember being at the
scene notwithstanding the fact that Sgt.A.Gomez placed
him at the scene in his report and officer F.D.De Hoyos
gave petitioner a field sobriety test on the day of the
auto-ped accident and they prevented him from testifying
in both trials dispite him being subpoenad.

TAB C.1

**CASE SUPPLEMENTAL R**

DEFENDANT'S
EXHIBIT

Printed: 09/14/2012 09:35

*Laredo Police Department*

CA: *11033953*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST*        **Case Mng Status:** *TURNED OVER TO DA`S*        **Occured:** *11/03/2011*

**Offense:** *INTOXICATED ASSAULT W/VEHICLE SBI*

**Investigator:** *RODRIGUEZ, MARCO A    (3618)*        **Date / Time:** *06/21/2012 11:11:46, Thursday*

**Supervisor:** *RODMAN, GABRIEL E Sr  (2522)*        **Supervisor Review Date / Time:** *06/21/2012 23:33:37, Thursday*

**Contact:**        **Reference:** *Offense Report*

On November 03, 2011 at approximately 1619hrs, I Traffic Officer Marco A. Rodriguez IBM (743) while working Traffic Enforcement heard over the police radio of an Auto Pedestrian accident at the intersection of Malinche Ave. and Green St.   Officers who arrived shortly advised that the female pedestrian later identified as Edna Rios Gonzalez 12/20/1954 out of 2003 Mercer St. was in serious condition and was being transported by ambulance to the Laredo Medical Center.  The vehicle involved was identified as a 1996, Green Chevrolet Tahoe with Texas Plates 1KG-356 driven by Michael La Flamme 05/13/1970 out of 368 S. Farm Market 649.

When Ms. Rios was being transported to The Laredo Medical Center officers on scene requested the "Crash Team" which is composed of Traffic officers and Accident Reconstructionists. I Officer Rodriguez proceeded to the location along with Traffic Officer J.G. Pena. On arrival, I met with Officers on scene who had kept the accident scene secured and blocked off for traffic. At that point, Ms. Rios was already at the Laredo Medical Center and was being prepared to be transported to a San Antonio, Texas Hospital due to her serious injuries.

Prior to making contact with the driver of the vehicle an unidentified male approached me and advised that he has seen the similar green Chevrolet SUV, involved in the accident, a couple of times by a drug house around the corner and for police to check him for possible drugs. I then made my way to the patrol unit where they had the driver Michael La Flamme inside a patrol unit.
I asked Mr. LaFlamme what had happened and he stated that he was traveling south bound on the 100 block of S. Malinche Ave. on the right side of the roadway.  Mr. LaFlamme stated that he was driving on his side of the roadway when he noticed Ms. Rios but was unable to stop on time.  Mr. La Flamme stated he noticed Ms. Rios walking southbound adjacent to the west side of the curb at the time of impact.  While talking to Mr. La Flamme I noticed he seemed to be under a Control Substance for the reason that he appeared as if La Flamme was drowsy and sleepy.  La Flamme repeatedly closed his eyes and lowered his face as if he was falling asleep while he explained in a slurred speech his side of the story.  La Flamme did appear as if he was under the influence of a Control Substance based on my knowledge, training, and experience when dealing with these types of individuals, I was also unable to detect any signs of alcoholic beverage use. While interviewing Mr. LaFlamme I also noticed his eyes were blood shot, appeared red in color and dilated.

La Flamme was told he was going to be transported to the Laredo Medical Center to collect a specimen of his blood by a certified phlebotomist. La Flamme was explained that the reason for the collection of his blood specimen was that I Officer Rodriguez had probable cause that he was under the influence of a control substance and that the auto pedestrian accident resulted with the other party receiving serious bodily injuries in which she had to be airlifted to a San Antonio Hospital.  Mr. La Flamme acknowledge verbally by stating ok.  On November 3, 2011, certified phlebotomist Juan Pablo Granger drew the blood from Mr. LaFlamme.  The blood vials were turned over to me where it was then logged into the Police Department property room with evidence tag # 2011-4808 Locker L-51A.

**SE SUPPLEMENTAL REPOR** Printed: 09/14/2012 09:35

*Laredo Police Department*                                                                    OCA: **11033953**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST*     **Case Mng Status:** *TURNED OVER TO DA`S*     **Occured:** *11/03/2011*

    **Offense:** *INTOXICATED ASSAULT W/VEHICLE SBI*

**Investigator:** *RODRIGUEZ, MARCO A     (3618)*         **Date / Time:** *06/21/2012 11:11:46, Thursday*

**Supervisor:** *RODMAN, GABRIEL E Sr (2522)*         **Supervisor Review Date / Time:** *06/21/2012 23:33:37, Thursday*

    **Contact:**         **Reference:** *Offense Report*

---

On March 5, 2012 Alcohol Analysis report from the Department of Public Safety Weslaco Crime Laboratory arrived to the Laredo Police Department with a "No alcohol detected" on La Flamme.

Results for drugs on La Flamme arrived May 16, 2012, from the Texas Department of Public Safety Crime Laboratory in Austin, Texas with results of Benzoylecgonine (cocaine metabolite) at 0.62 milligrams per liter and Morphine at 0.01 milligrams per liter.

On June 20, 2012 the case was introduced to the District Attorney where an Intoxication Assault F/3 Warrant was approved. The warrant listed was signed by judge Hector Liendo at $75,000.00 bond. The same day June 20, 2012 subject Michael LaFlamme was arrested at International Bridge #2 located at 100 Sta. Ursula Ave. LaFlamme was read his miranda warnings in english then taken to the Laredo Police Department for booking process where he was later transported to the Webb County Jail under $75,000.00 bond set by Judge Hector Liendo.

CASE SUPPLEMENTAL REPORT

TAB C.2

OCA: *11033953*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST*  **Case Mng Status:** *TURNED OVER TO DA`S*  **Occurred:** *11/03/2011*

**Offense:** *INTOXICATED ASSAULT W/VEHICLE SBI*

**Investigator:** *GONZALEZ, JESUS ROBERT Jr*  **Date / Time:** *09/25/2013 00:42:17, Wednesday*

**Supervisor:** *VILLARREAL, GILBERTO*  *(2912)*  **Supervisor Review Date / Time:** *09/25/2013 02:39:29, Wednesday*

**Contact:**  **Reference:** *Assisting Officer Supplement*

On November 3rd 2011 at approx. 4:20 p.m. I Ofc. J. Gonzalez was dispatched to an auto pedestrian accident at N. Malinche Ave. and Green St. While en-route to the scene Laredo Police dispatch advised that the patient was on the ground and provided no other information. As I continued to the scene, Sgt. A. Gomez who had already arrived at the scene began advising via police radio that a female victim was on the ground unresponsive. Upon arrival at the scene I noticed that not only was Sgt. Gomez there, but Ofc. C. Rosales as well who were both attending to the victim later identified as Edna Gonzalez Rios. I then immediately noticed a slender light complected male subject later identified as Michael LaFlamme (D.O.B 05-13-70) pacing back and forth on the side of the street with his hands gripping the top of his head next to a green in color Chevrolet Tahoe. The Tahoe displayed Tx. Plates (1KG-356).

I then approached Mr. LaFlamme and as I walked closer to him, he kept saying that he didn`t mean to hit her. He then mentioned that she, referring to the female victim came out of nowhere and he couldn`t stop on time. Mr. LaFlamme showed concern for the female victim and kept asking hysterically over and over again if she was going to be o.k. He then kept saying "Oh shit I fucking killed her." I then briefly spoke to him in an attempt to gather more information on the situation at hand. As I continued speaking to him I noticed that he had blood-shot eyes, spoke in a slurred/slow speech, and had dry mouth to the point where he had white markings on the edges of his mouth. He also had severely cracked lips which were peeling and kept licking his lips non-stop as if trying to keep them moist. I also noticed a few more characteristics such as dilated pupils, profuse sweating, and what concerned me the most was his behavior which would go from a very fast and alert pace with eyes wide open to a slow, droopy, and sluggish pace. Mr. LaFlamme on several occasions while talking at eye level would lower is head and would begin to dose off or fall asleep which lasted only for a few seconds and would then continue conversing but actually was lost about the conversation. At that time due to my knowledge, training, and experience with dealing with those types of individuals, it appeared that Mr. LaFlamme was under the influence of some type of controlled substance. Nonetheless I was unable to detect any signs of alcoholic beverage use or consumption.

Meanwhile, Laredo Fire and Rescue personnel mentioned that the victim appeared to have suffered serious injuries and that she would be transported to the Laredo Medical Center for further treatment. Sgt. A. Gomez later requested the Laredo Police Department Traffic Division reconstruction team who took over the accident being that it involved serious injuries. Mr. LaFlamme was later detained in the back-seat of a patrol unit by an assisting officer. I then focused on securing the scene awaiting the arrival of the "Crash Team" led by Case Officer M. Rodriguez. As I stood at a distance, I frequently glanced at Mr. LaFlamme and noticed that he was asleep as he sat in the back-seat of the patrol unit which was not normal given the circumstances. Upon the arrival of the "Crash Team," they were briefed on the accident which they later took over.

**Investigator Signature:** _____

**CASE SUPPLEMENTAL REPORT** Printed: 10/07/2013 10:30

*Laredo Police Department*                                                    OCA: *11033953*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST*        **Case Mng Status:** *TURNED OVER TO DA`S*        **Occurred:** *11/03/2011*

   **Offense:** *INTOXICATED ASSAULT W/VEHICLE SBI*

**Investigator:** *GONZALEZ, JESUS ROBERT Jr*                **Date / Time:** *09/25/2013 00:42:17, Wednesday*

**Supervisor:** *VILLARREAL, GILBERTO     (2912)*      **Supervisor Review Date / Time:** *09/25/2013 02:39:29, Wednesday*

   **Contact:**                                                     **Reference:** *Assisting Officer Supplement*

This report is the pr... the Laredo Police... Neither it or its con... be disseminated outside th... Agency to which loaned.

   Case Officer Mark Rodriguez later informed us that Mr. LaFlamme was to be transported to Laredo Medical Center to collect a specimen of his blood for future analysis due to the fact that it was suspected that he was under the influence of a controlled substance as mentioned earlier.  This was done since the accident involved serious injuries.  Ofc. C. Rosales later transported him to the Laredo Medical Center hospital.

**Investigator Signature:** 

# CASE SUPPLEMENTAL REPORT

OCA: **11033953**

BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST*       **Case Mng Status:** *TURNED OVER TO DA'S*       **Occurred:** *11/03/2011*

**Offense:** *INTOXICATED ASSAULT W/VEHICLE SBI*

---

**Investigator:** *ROSALES, CHARLIE A     (5308)*       **Date / Time:** *09/11/2013 01:07:32, Wednesday*

**Supervisor:** *VILLARREAL, GILBERTO      (2912)*       **Supervisor Review Date / Time:** *09/12/2013 02:37:17, Thursday*

**Contact:**                                           **Reference:** *Assisting Officer Supplement*

---

On November 03, 2011 at approximately 1620hrs, I was dispatch to an Auto Pedestrian Accident at the intersection of Green St and Malinche Ave. It was reported that a patient was down on the ground and was unresponsive. I arrived at approximately 1624hrs and directed my attention to a female, who was laying on the asphalt. The female victim was later identified as Edna Rios Gonzalez.

A male subject later identified as Michael LaFlamme, who in a type of slurred speech mentioned that the vehicle was operated by him and he was unable to stop on time. LaFlamme appeared to have bloodshot eyes, drymouth to the point where he had white markings on the edges of his mouth. LaFlamme also had dilated pupils and would constantly move his lower jaw side to side and up and down. LaFlamme did demonstrate concern for the victim, as he constantly asked if she was going to be okay. LaFlamme began to pace up and down, and because of the aforementioned characteristics, a concern grew that LaFlamme might possibly be under the influence of some type of stimulant.

Meanwhile Laredo Fire and Rescue Paramedics mentioned that the victim appeared to have suffered serious injuries and she would be transported to the Laredo Medical Center. Laredo Police Department Traffic Division was called by Sgt Gomez and asked to take over the accident, as it involved serious injuries. I then observed LaFlamme as he would dose off and then wake up as he sat in the back of the patrol car.

Officer Mark Rodriguez later arrived on scene and asked that LaFlamme be transported to Laredo Medical Center and have samples of his blood taken. This was done since the accident involved serious bodily injuries. I transported LaFlamme to the Laredo Medical Center and waited for Officer Rodriguez to arrive. Samples were eventually taken from LaFlamme who kept dosing off, only to wake up and become very restless. LaFlamme complained and threatened to file charges and lawsuits against anyone who drew blood from his body. He mentioned that he did not consent to the taking of his blood. He argued that he would file assault charges if force was used to draw his blood. Officer Rodriguez explained to LaFlamme that it was a procedure that is followed when an accident involves serious bodily injuries. LaFlamme eventually agreed to the withdrawal of his blood.

---

**Investigator Signature:**_____

TAB C.4      .SE SUPPLEMENTAL REPORT      Printed: 10/07/2013  11:40

*NOT SUPERVISOR APPROVED*

OCA: *11033953*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Investigator: *GOMEZ, ANTHONY    (1649)*        Date / Time: *10/07/2013 10:41:15, Monday*

Supervisor: *(0)*        Supervisor Review Date / Time: *NOT REVIEWED*

Contact:        Reference: *Assisting Officer Supplement*

      On November 3rd 2011 at approximately 4:19pm, the Laredo Police Department received a call for an auto-ped accident by Malinche Avenue and Green Street. Dispatch send a couple of units and I Sgt Anthony Gomez was dispatched as well, I arrived at around 4:25 pm. Upon arrival, I observed an elderly female on the ground on Malinche Street. Female was later identified as Edna Gonzalez d.o.b. 12.20.1954 of 2003 Mercer Street. Mrs. Gonzalez was unconcious and had shallow breathing. There was a green Chevrolet Tahoe with Texas plates 1KG-356 parked near by Mrs. Gonzalez.

      At about this time, Officer Rosales and I were attending Mrs. Gonzalez attempting to wake her we would call her out and try to get her to answer. She would not respond. An officer told me that they had the driver of the green Tahoe. I just advised the Officer to secure the driver due to the fact that we were attempting to contact the CRASH team. Officer J. Gonzalez (304) and Officer F.D. Dehoyos (215) were in the back with the driver of the green Tahoe, he was later identified as Michael LaFlamme d.o.b. 05.13.1970. ,.

      At this time Laredo Fire Department Paramedics had arrived and began working on Mrs. Gonzalez. As the tried to stabilize Mrs. Gonzalez, a medic advised me that they could not stabilize and that they needed to transport ASAP, and that most likely Mrs. Gonzalez was going to have to get airlifted to San Antonio due to the severity of her injuries.

      Next, I notified dispatch to get a hold on the CRASH team. Sgt Michael Raines called me and informed me that they were sending someone, and that they were short handed. Thus, from patrol I summoned Officer J.E. Martinez (1303) and M.A. Villarreal (1511) as they were both former traffic and CRASH team members to assist on this auto-ped accident. Officer Marco Rodriguez and J.G> Pena responded to the auto-ped accident.

      I was scanning the scene and observed the tire marks where the green Tahoe leaving the actual lane of travel and jumping the curve. Furthermore, I observed the hood area of the green Tahoe with fresh damage. Consistent with what a male witness stated at the scene. As I continued to walk the scan the scene i found some paint chips that appeared to belong to the green Tahoe, just a few feet North of the accident scene. Placing the point of impact just north of from where Mrs. Gonzalez landed,

      The witness was secured and a statement was obtained from this male witness. Also, A CSI was requested. CSI Abrahm DeLa Garza responded and took photographs of the scene and the vehicle.

      Meanwhile, I saw the subject Laflamme in the backseat of a unit. I observed his behavior from close by. Laflamme was saying to the effect, "Oh shit I killed her." He continued saying things such "I didnt mean to killer her." Laflamme was sweating profusely and without reason. He had what appeared to be blood shot eyes. He also had cotton mouth and he continued to lick his lips in attempts to moisten his lips. He was acting really nerves antsy, he would keep stroking his arms and tights. Then he would just stop his behavior and he would start it up again. He looked to be under the influence of narcotics. LaFlamme did not smell like alcohol, he in my personal experience looked to be high under the influence of drugs.

Investigator Signature:_____

TAB C.5

OCA: *11033953*

BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

CLEARED BY ARREST          **Case Mng Status:** *TURNED OVER TO DA'S*          **Occurred:** *11/03/2011*

**Offense:** *INTOXICATED ASSAULT W/VEHICLE SBI*

---

**Investigator:** DE HOYOS, FERNANDO DANIEL      **Date / Time:** *09/11/2013 00:56:07, Wednesday*

**Supervisor:** LICHTENBERGER, NICHOLAS      **Supervisor Review Date / Time:** *09/11/2013 01:48:34, Wednesday*

**Contact:**      **Reference:** *Assisting Officer Supplement*

---

ON 09/05/2013, I OFFICER F DEHOYOS WAS CONTACTED BY SGT. GRANADA DURING THE AFTERNOON HOURS BY PHONE. SGT. GRANADA ADVISED ME TO CONTACT ASSISTANT DISTRICT ATTORNEY TIMOTHY EDDINGS FOR CASE#11-033953. SHORTLY AFTERWARD, I CONTACTED MR. EDDINGS BY PHONE AND WAS ADVISED BY HIM TO MAKE CONTACT WITH HIM ON 09/06/2013 AT 1110 VICTORIA ST TO DISCUSS A CASE PERTAINING TO AN AUTOPED CALL AT GREEN ST/N MALINCHE AVE. MR. EDDINGS HAD ADVISED ME THAT AN ELDERLY WOMAN HAD BEEN STRUCK BY A VEHICLE AT LISTED INTERSECTION. AS SOON AS I WAS INFORMED OF THE INCIDENT, I COULD NOT RECALL EVEN THE SLIGHTEST MEMORY OF THAT PARTICULAR INCIDENT. WHEN I CAME ON DUTY LATER THAT NIGHT, I REFERRED BACK BY THE CASE NUMBER TO THAT PARTICULAR CALL AND NOTICED THAT I HAD ARRIVED AT 16:28 HOURS AND CLEARED THE CALL AT 16:41 HOURS(13 MINUTES). LATER THAT MORNING, I CALLED A.D.A. EDDINGS AND ADVISED HIM OF MY FINDINGS. MR. EDDINGS THEN ASKED ME IF I COULD BRING IN A CALL LOG OF THE DISPATCH PAGE TO HIM FROM RECORDS. I THEN DROVE OVER TO POLICE HEADQUARTERS AND MADE CONTACT WITH THE RECORDS DEPARTMENT AND WAS ABLE TO RETRIEVE THE CALL LOG. AFTER RETRIEVING THE LOG, I DROVE OVER TO MR. EDDINGS OFFICE AND SHOWED HIM THE LOG FORM AND EXPLAINED TO HIM THAT THE REASON THAT I DID NOT REMEMBER ANY DETAILS OF THE INCIDENT IS BECAUSE I WAS AT THE SCENE FOR ONLY 13 MINUTES. I ASSUMED THAT I MIGHT HAVE ARRIVED AT THE SCENE AND STAYED ON THE OUTSKIRTS OF THE CRASH SCENE AND WAS THEN SHORTLY WAS ASKED BY DISPATCH TO TAKE ANOTHER ACCIDENT CALL AT GUATEMOZIN ST/STONE AVE(CASE#11-033959). I THEN EXPLAINED TO MR. EDDINGS THAT IT WAS MY BELIEF AND REASON WHY I DID NOT RECALL EVER SEEING MR. MICHEAL LA FLAMME, HIS VEHICLE NOR THE ELDERLY LADY THAT WAS INJURED IN HIS CASE.

---

**Investigator Signature:** _____

APPENDIX

TAB-D

**TAB-D** Entravision Communications Corp. 222 Bob Bullck Loop, Laredo
Texas 78043, entered into evidence by Business Record
Affidavit, signed by custodian of records, Alma E. Ferrara,
on July 1,2015. Video has been modified from video shown in
both trials. this video was cropped down so it only shows
the lower back bumper of the Chevy Tahoe and the shoe in the
street, Also the segment that shows the police officer with
police car in the background has been cropped so you can't
see that it wasn't filmed at the intersection of Malinche]
and Green St. Notice in this altered video you can not see
the police sirens on the cop cars. During the trial I asked
State Witness,Jose Luis Manrique: "What did you notice about
the police cars? Did they have sirens on?" Mr. Manrique:"Yes"
Petitioner: "All of them right? They all had sirens?" Mr.
Manrique: "Yes." [2](5 RR 183 line(s)1-5). I only have one
copy of this video.  This video was not filmed on the day of
the accident.

TAB-D

TAD-D Video addressed in Ground Six. This video has been altere
from the video that was shown during the first and second
trial. This video was cropped down so you can't see the
Chevy Tahoe, ather than the back lower bumper and shoe in
the street. Also the police officer with police cars in
bachground has been cropped down so you can't see that
it wasn't filmed at the intersection of Malinche and Green
street.  You also can't see the sirens on the police cars
that were visable in the video shown during trial.[2](5 RR
183 line(s)1-5). Why was State witness,Jose Luis Manrique,
able to give testimony about the sirens during the trial
and in this altered video you can't see the police car
sirens.  Unbelievable.



US POSTAGE >> PITNEY BOWES

ZIP 78040
02 1W
0001402592 AUG 22 2018

$ 000.68

MICHAEL WILFRED LAFLAMME #02045009
C/O UNIT LAW LIBRARY
A.M. STRINGFELLOW UNIT
1200 F.M. 655
ROSHARON, TX 77583



TAB-D.1



## APPENDIX

TAB **"E"**- Original indictment.

TAB **E.1**   Complaint made by officer Marco A.Rdz in which he spoke
intoxication into existance 7½ mo. after accident.

TAB **E.2** Case supplemental report in which officer M.A.Rdz. spoke
intoxication into existance with complaint & supp. report
exact same report cut and paste inventing probable cause
due to nothing intoxicating in blood. Ham sandwich indictment.

Tab-E

No. 2013CRW160-D4

THE STATE OF TEXAS
VS.
**MICHAEL WILFRED LAFLAMME**
D. O. B: 05-13-70
386 S FM 649
HEBBRONVILLE, TX 78361
Booking No. 201200005612
TRN No. 9127606503

INDICTMENT

OFFENSE
INTOXICATED ASSAULT W/VEHICLE SBI F3
PENAL CODE: 49.07     CJIS CODE # 13990024

ATTORNEY
CARLOS QUESADA

NAMES OF WITNESSES:

GILBERTO BENAVIDEZ   FERNANDO DE HOYOS   ABRAHAM DE LA GARZA   JESUS
GONZALEZ   J E MARTINEZ   MARCO RODRIGUEZ   CHARLIE ROSALES   MARIO ALBERTO
VILLARREAL   ANTHONY GOMEZ   ARMANDO ELIZONDOJR.   G J PENA

| | |
|---|---|
| D. O. O:  11-03-11 | D.A. FILE # 111-12-06073 |
| D. O. A:  06-20-12 | ASST. D.A. CARLOS QUESADA |

A TRUE BILL:

_____
Foreperson of the Grand Jury

Presented in open Court by the Grand Jury, a Quorum thereof being present, and filed the 13 day of Feb. 2013.
Esther Degollado District Clerk, _____ District Court,

By, _____, Deputy

Amount of Bail. $_____

THE STATE OF TEXAS}
                                    }
COUNTY O F WE     }

I, Esther Degollado, Clerk of the _____ District Court of Webb County, Texas, do hereby certify that the within and foregoing is a true and correct copy of the original Bill of this indictment , filed in said Court on the_____ day of _____ A.D. 2013, in Cause No. _____. St   d The State of Texas VS.: **MICHAEL WILFRED LAFLAMME**.
Given under my hand and seal of said Court, at office in Laredo, Texas,  this _____ day of _____ A.D. 2013.

ESTHER DEGOLLADO , Clerk

By_____, Deputy

*In the Name and by the Authority of the State of Texas:*

*THE GRAND JURORS, duly selected, organized, sworn and impaneled as such for the County of Webb, State of Texas, at the JANUARY-JUNE term, 2013, of the 111TH DISTRICT COURT sitting in for the 406th District Court of said County upon their oaths present in and to the said Court that on or about the 3rd day of November, A.D., 2011 and anterior to the presentment of this indictment, in the County and State aforesaid, MICHAEL WILFRED LAFLAMME, did then and there operate A MOTOR VEHICLE IN PUBLIC PLACE while intoxicated by reason of the introduction of alcohol into the body, and did by reason of such intoxication cause serious bodily injury to another, namely, EDNA GONZALEZ, by accident or mistake, to-wit: by DRIVING SAID MOTOR VEHICLE INTO THE PERSON OF THE SAID INJURED PARTY.*

*Against the Peace and Dignity of the State.*

_____

*Foreperson of the Grand Jury*

Tab-E.1

IN JUSTICE COURT                               NO. ___W-11541___

**WEBB COUNTY, TEXAS**

## COMPLAINT

    I, **Officer Marco A. Rodriguez, LPD**, being duly sworn, do state upon my oath, that I have reason to believe and do believe based upon the following information:

On November 03, 2011 at approximately 1619hrs, I Traffic Officer Marco A. Rodriguez IBM (743) while working Traffic Enforcement heard over the police radio of an Auto Pedestrian accident at the intersection of Malinche Ave. and Green St.   Officers who arrived shortly advised that the female pedestrian later identified as Edna Rios Gonzalez 12/20/1954 out of 2003 Mercer St. was in serious condition and was being transported by ambulance to the Laredo Medical Center.  The vehicle involved was identified as a 1996, Green Chevrolet Tahoe with Texas Plates IKG-356 driven by Michael La Flamme 05/13/1970 out of 368 S. Farm Market 649.  When Ms. Rios was being transported to The Laredo Medical Center officers on scene requested the "Crash Team" which is composed of Traffic officers and Accident Reconstructionists.  I Officer Rodriguez proceeded to the location along with Traffic Officer J.G. Pena.  On arrival, I met with Officers on scene who had kept the accident scene secured and blocked off for traffic.  At that point, Ms. Rios was already at the Laredo Medical Center and was being prepared to be transported to a San Antonio, Texas Hospital due to her serious injuries. Prior to making contact with the driver of the vehicle an unidentified male approached me and advised that he has seen the similar green Chevrolet SUV, involved in the accident, a couple of times by a drug house around the corner and for police to check him for possible drugs. I then made my way to the patrol unit where they had the driver Michael La Flamme inside a patrol unit.  I asked Mr. LaFlamme what had happened and he stated that he was traveling south bound on the 100 block of S. Malinche Ave. on the right side of the roadway.  Mr. LaFlamme stated that he was driving on his side of the roadway when he noticed Ms. Rios but was unable to stop on time.  Mr. La Flamme stated he noticed Ms. Rios walking southbound adjacent to the west side of the curb at the time of impact.  While talking to Mr. La Flamme I noticed him to be under a Control Substance for the reason that he appeared as if La Flamme was drowsy and sleepy. La Flamme repeatedly closed his eyes and lowered his face as if he was falling asleep while he explained in a slurred speech his side of the story.  La Flamme did appear as if he was under the influence of a Control Substance based on my knowledge, training, and experience when dealing with these types of individuals. I was also unable to detect any signs of alcoholic beverage use.  While interviewing Mr. LaFlamme I also noticed his eyes were blood shot, appeared red in color and dilated.  La Flamme was told he was going to be transported to the Laredo Medical Center to collect a specimen of his blood by a certified phlebotomist.  La Flamme was explained that the reason for the collection of his blood specimen was that I Officer Rodriguez had probable cause that he was under the influence of a control substance and that the auto pedestrian accident resulted with the other party receiving serious bodily injuries in which she had to be airlifted to a San Antonio Hospital.  Mr. La Flamme acknowledge verbally by stating ok.  On November 3, 2011, certified phlebotomist Juan Pablo Granger drew the blood from Mr. LaFlamme.  The blood vials were turned over to me where it was then logged into the

Police Department property room with evidence tag # 2011-4808 Locker L-51A. On March 5, 2012 Alcohol Analysis report from the Department of Public Safety Weslaco Crime Laboratory arrived to the Laredo Police Department with a "No alcohol detected" on La Flamme. Results for drugs on La Flamme arrived May 16, 2012, from the Texas Department of Public Safety Crime Laboratory in Austin, Texas with results of Benzoyleegonine (cocaine metabolite) at 0.62 milligrams per liter and Morphine at 0.01 milligrams per liter.

And I charge that heretofore, that on or about the 3rd day of **November, 2011**, in the County of Webb and State of Texas, **Michael La Flamme**, Defendant, did then and there operate a motor vehicle in a public place while intoxicated by reason of the introduction of a controlled substance, a drug, or a dangerous drug into the body (Benzoyleegonine [cocaine metabolite] 0.62 milligrams per liter and Morphine 0.01 milligrams per liter), and did by reason of such intoxication cause serious bodily injury to another, namely, **Edna Rios Gonzalez**, by accident or mistake, to-wit: by driving said motor vehicle into the person of the said injured party. ——

Against the Peace and Dignity of the State.

_____
Complainant

Sworn to and subscribed before me by **Officer Marco A. Rodriguez, LPD**, a credible person, on the ⟨20th⟩ day of **June, 2012**.

_____
Justice of the Peace
Webb County, Precinct __1__, Pl _1_.

Tab-E.2          CASE SUPPLEMENTAL R_____          Printed: 09/14/2012 09:35



DCA: *11033953*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST*      **Case Mng Status:** *TURNED OVER TO DA`S*      **Occured:** *11/03/2011*

**Offense** *INTOXICATED ASSAULT W/VEHICLE SBI*

---

**Investigator:** *RODRIGUEZ, MARCO A   (3618)*          **Date / Time:** *06/21/2012 11:11:46, Thursday*

**Supervisor:** *RODMAN, GABRIEL E Sr  (2522)*      **Supervisor Review Date / Time:** *06/21/2012 23:33:37, Thursday*

**Contact:**          **Reference:** *Offense Report*

---

On November 03, 2011 at approximately 1619hrs, I Traffic Officer Marco A. Rodriguez IBM (743) while working Traffic Enforcement heard over the police radio of an Auto Pedestrian accident at the intersection of Malinche Ave. and Green St.   Officers who arrived shortly advised that the female pedestrian later identified as Edna Rios Gonzalez 12/20/1954 out of 2003 Mercer St. was in serious condition and was being transported by ambulance to the Laredo Medical Center.   The vehicle involved was identified as a 1996, Green Chevrolet Tahoe with Texas Plates 1KG-356 driven by Michael La Flamme 05/13/1970 out of 368 S. Farm Market 649.

When Ms. Rios was being transported to The Laredo Medical Center officers on scene requested the "Crash Team" which is composed of Traffic officers and Accident Reconstructionists. I Officer Rodriguez proceeded to the location along with Traffic Officer J.G. Pena. On arrival, I met with Officers on scene who had kept the accident scene secured and blocked off for traffic.   At that point, Ms. Rios was already at the Laredo Medical Center and was being prepared to be transported to a San Antonio, Texas Hospital due to her serious injuries.

Prior to making contact with the driver of the vehicle an unidentified male approached me and advised that he has seen the similar green Chevrolet SUV, involved in the accident,  a couple of times by a drug house around the corner and for police to check him for possible drugs. I then made my way to the patrol unit where they had the driver Michael La Flamme inside a patrol unit.
I asked Mr. LaFlamme what had happened and he stated that he was traveling south bound on the 100 block of S. Malinche Ave. on the right side of the roadway.   Mr. LaFlamme stated that he was driving on his side of the roadway when he noticed Ms. Rios but was unable to stop on time.   Mr. La Flamme stated he noticed Ms. Rios walking southbound adjacent to the west side of the curb at the time of impact.   While talking to Mr. La Flamme I noticed he seemed to be under a Control Substance for the reason that he appeared as if La Flamme was drowsy and sleepy.   La Flamme repeatedly closed his eyes and lowered his face as if he was falling asleep while he explained in a slurred speech his side of the story.   La Flamme did appear as if he was under the influence of a Control Substance based on my knowledge, training, and experience when dealing with these types of individuals, I was also unable to detect any signs of alcoholic beverage use. While interviewing Mr. LaFlamme I also noticed his eyes were blood shot, appeared red in color and dilated.

La Flamme was told he was going to be transported to the Laredo Medical Center to collect a specimen of his blood by a certified phlebotomist.  La Flamme was explained that the reason for the collection of his blood specimen was that I Officer Rodriguez had probable cause that he was under the influence of a control substance and that the auto pedestrian accident resulted with the other party receiving serious bodily injuries in which she had to be airlifted to a San Antonio Hospital.  Mr. La Flamme acknowledge verbally by stating ok.  On November 3, 2011, certified phlebotomist Juan Pablo Granger drew the blood from Mr. LaFlamme.  The blood vials were turned over to me where it was then logged into the Police Department property room with evidence tag # 2011-4808 Locker L-51A.

*Laredo Police Department*

OCA: **11033953**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST*    **Case Mug Status:** *TURNED OVER TO DA`S*    **Occured:** *11/03/2011*

**Offense:** *INTOXICATED ASSAULT W/VEHICLE SBI*

**Investigator:** *RODRIGUEZ, MARCO A    (3618)*    **Date / Time:** *06/21/2012 11:11:46, Thursday*

**Supervisor:** *RODMAN, GABRIEL E Sr (2522)*    **Supervisor Review Date / Time:** *06/21/2012 23:33:37, Thursday*

**Contact:**    **Reference:** *Offense Report*

On March 5, 2012 Alcohol Analysis report from the Department of Public Safety Weslaco Crime Laboratory arrived to the Laredo Police Department with a "No alcohol detected" on La Flamme.
Results for drugs on La Flamme arrived May 16, 2012, from the Texas Department of Public Safety Crime Laboratory in Austin, Texas with results of Benzoylecgonine (cocaine metabolite) at 0.62 milligrams per liter and Morphine at 0.01 milligrams per liter.

On June 20, 2012 the case was introduced to the District Attorney where an Intoxication Assault F/3 Warrant was approved.  The warrant listed was signed by judge Hector Liendo at $75,000.00 bond.  The same day June 20, 2012 subject Michael LaFlamme was arrested at International Bridge #2 located at 100 Sta. Ursula Ave.  LaFlamme was read his miranda warnings in english then taken to the Laredo Police Department for booking process where he was later transported to the  Webb County Jail under $75,000.00 bond set by Judge Hector Liendo.

**APPENDIX**
**TAB-F**


**TAB-F** Toxicology Report Addressed In Ground Three. Refer To Trial
Court State's Exhibit #25.

# TEXAS DEPARTMENT OF PUBLIC SAFETY



**CRIME LABORATORY**
5800 Guadalupe
Austin, TX 78752
Voice 512-424-2105 Fax 512-424-2869
AustinCrimeLab@dps.texas.gov



STEVEN C. McCRAW
DIRECTOR
DAVID G. BAKER
CHERYL MacBRIDE
DEPUTY DIRECTORS

COMMISSION
A. CYNTHIA LEON, CHAIR
ADA BROWN
CARIN MARCY BARTH
ALLAN B. POLUNSKY
JOHN STEEN

## Toxicology Laboratory Report

Issue Date:   May 16, 2012

M Rodriguez
Laredo Police Department
4712 Maher
Laredo, TX 78041

**Laboratory # L3M-92293**
**Agency # 1133953**
**County: Webb**
**Offense Date:** 11/03/2011

**Suspect(s)**   Laflamme, Michael   (DOB 05/13/70) TX DL 15408509

**Victim(s)**   Gonzalez, Edna Rios   (DOB 12/20/54) TX DL 07077898

**Requested Analysis:** Analyze for drug content

**Submission Information:**

   **1** Fed Ex white paper bag on January 05, 2012 by Fed Ex #8987582291690200

**Evidence Description, Results of Analysis and Interpretation:**

1  - Fed Ex white paper bag

---

   **1-01  - Gray top blood tubes (2)**
   Name was indicated on the plastic tube as "Michael Laflamme."

**Immunoassay Screening:**

| Drug Class: | Result: |
|---|---|
| Amphetamines | Negative |
| Barbiturates | Negative |
| Benzodiazepines | Negative |
| Carisoprodol/Meprobamate | Negative |
| Cocaine/metabolites | *Further Analysis |
| Opiates | *Further Analysis |
| Phencyclidine | Negative |

* Immunoassay screening indicated the need for further analysis; please refer to "Confirmation" section.
Further analysis may also have been performed due to submitted case information.

**Confirmation:**

| Drug(s): | Result: | Method: |
|---|---|---|
| Benzoylecgonine (cocaine metabolite) | 0.62 milligrams per liter | LCMS |
| Morphine | 0.01 milligrams per liter | LCMS |

The evidence is being returned under separate cover.

**STATE'S EXHIBIT**
25

PENGAD 800-531-6989

TxDPS 5.9.12

***ACCREDITED BY THE AMERICAN SOCIETY OF CRIME LABORATORY DIRECTORS - LAB ACCREDITATION BOARD***
COURTESY · SERVICE · PROTECTION

Page 1 of 2

| Laboratory Case Number | Agency Case Number | Offense Date |
|---|---|---|
| L3M-92293 | 1133953 | 11/03/2011 |

This report has been electronically prepared and approved by:

Eduardo Padilla
Forensic Scientist
Texas DPS Headquarters Crime Laboratory