UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| MICHAEL WILFRED LAFLAMME, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 5:18-CV-134 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## ORDER

Now before the Court is Petitioner Michael LaFlamme's *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Dkts. Nos. 1–2). Respondent Lorie Davis has filed a Motion for Summary Judgment (Dkt. No. 33), and Petitioner has filed a Response (Dkt. No. 35). Also pending are Petitioner's Motion for Funding to Secure Investigative Assistance (Dkt. No. 6), Motion for Investigation (Dkt. No. 9), and two Requests for Evidentiary Hearings (Dkt. Nos. 17, 27). Having considered the parties' filings and the applicable law, the Court hereby **GRANTS** summary judgment for Respondent, **DENIES** each of Petitioner's motions, and **DISMISSES** this case **WITH PREJUDICE**.

## I. BACKGROUND

On November 3, 2011, Petitioner struck a pedestrian with his vehicle. (Dkt. No. 34-5 at 1). Although Petitioner was detained at the scene, he was not arrested until toxicology tests returned positive for the presence of morphine and benzoylecgonine, a cocaine metabolite. (*Id.*). After representing himself at trial in 2015, Petitioner was convicted of intoxication assault with a deadly weapon in Webb County state court and sentenced to sixteen years imprisonment. (Dkt. No. 34-44 at 65–66, 72–73; Dkt. No. 34-25 at 5:21–6:22). Petitioner appealed to Texas' Fourth Court of Appeals on the following grounds:

1. Error in admitting photographs during the sentencing phase;

2. Improper judicial notice as to prior convictions during the sentencing phase;

3. Error by the prosecution in attempting to discuss unadjudicated arrests during the sentencing phase;

4. Ineffective assistance of stand-by counsel during trial; and

5. Failure by the court to *sua sponte* remove a juror who Petitioner neglected to strike.

(Dkt. No. 34-5). Petitioner's conviction was affirmed on appeal (Dkt. No. 34-4), and the Texas Court of Criminal Appeals (CCA) refused his petition for discretionary review. *LaFlamme v. State*, No. PD-0692-17 (Tex. Crim. App. 2018). Petitioner then filed an application for a state writ of habeas corpus challenging his conviction on eight grounds:

1. Trial by a partial and biased jury in violation of the Sixth Amendment;

2. Abuse of discretion by the trial judge for failing to correct a mistake in Petitioner's use of peremptory strikes during jury selection;

3. Violation of due process because the conviction was without evidence to support the element of intoxication;

4. Abuse of discretion by the trial judge for failing to grant Petitioner's motion for a new trial;

5. Admission of prejudicial and misleading evidence;

6. Abuse of discretion by the trial judge for twice permitting the amendment of the grand jury indictment;

7. Disobedience of witnesses by failing to produce evidence requested via trial subpoenas duces tecum; and

8. Abuse of discretion by the trial judge in admitting blood evidence through a police officer.

(Dkt. No. 34-44 at 20–40). The CCA denied Petitioner's application without written order on June 13, 2018. (Dkt. No. 34-32).

## II. THE INSTANT PETITION

Petitioner now asserts the same eight claims for federal habeas relief, albeit in a different order:

1. Trial by a partial and biased jury in violation of the Sixth Amendment;

2. Abuse of discretion by the trial judge for failing to correct a mistake in Petitioner's use of peremptory strikes during jury selection;

3. Violation of due process because the conviction was without evidence to support the element of intoxication;

4. Abuse of discretion by the trial judge for twice permitting the amendment of the grand jury indictment;

5. Disobedience of trial witnesses by failing to produce evidence requested via trial subpoenas duces tecum;

6. Abuse of discretion by the trial judge by admitting prejudicial and misleading evidence;

7. Abuse of discretion by the trial judge in admitting blood evidence through a police officer; and

8. Abuse of discretion by the trial judge for failing to grant Petitioner's motion for a new trial.

(Dkt. No. 1 at 6–9).

Respondent has moved for summary judgment, arguing that Petitioner's claims are without merit and that claim three (insufficiency of evidence) is unexhausted and procedurally barred. (Dkt. No. 33). Respondent further contends that Petitioner has failed to carry his burden of demonstrating that the state-court denials of these claims conflict with established federal law or are based on an unreasonable determination of the facts in light of the evidence. (*Id.*).

III.   LEGAL STANDARDS

A. **Habeas Review**

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA).  *See* 28 U.S.C. § 2254.  Under AEDPA, federal habeas relief is unavailable for any

claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or (2)

resulted in a decision that was based on an unreasonable determination of the facts in light

of the evidence presented in the state court proceeding."  28 U.S.C. §§ 2254(d)(1)–(2).  The

Supreme Court has explained how § 2254(d) affects the reviewability of claims already

adjudicated without a written order:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits"
> in state court, subject only to the exceptions in §§ 2254(d)(1) and (2). . . . Where
> a state court's decision is unaccompanied by an explanation, the habeas
> petitioner's burden still must be met by showing there was no reasonable basis
> for the state court to deny relief. This is so whether or not the state court
> reveals which of the elements in a multipart claim it found insufficient, for
> § 2254(d) applies when a "claim," not a component of one, has been adjudicated.
> . . . When a federal claim has been presented to a state court and the state
> court has denied relief, it may be presumed that the state court adjudicated
> the claim on the merits in the absence of any indication or state-law procedural
> principles to the contrary.

*Harrington v. Richter*, 562 U.S. 86, 98–99 (2011) (internal citations omitted).  Thus, because

there is no indication or state-law procedural principle to the contrary, the CCA's denial of

Petitioner's state habeas petition without a written order is an adjudication on the merits of

all eight of Petitioner's claims.

B. **Summary Judgment**

Summary judgment is appropriate when the pleadings and evidence show that there

is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter

of law.  FED. R. CIV. P. 56(a).  Once the movant presents "a properly supported motion for

summary judgment, the burden shifts to the nonmoving party to show with significant probative evidence that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (internal quotation marks omitted).

Ordinary summary judgment rules apply in § 2254 proceedings to the extent that they do not conflict with the federal rules governing habeas proceedings. *Austin v. Davis*, 647 F. App'x 477, 484 (5th Cir. 2016). Section 2254(e)(1) mandates that a state court's findings are presumed to be correct, thereby overriding the typical rule that all disputed facts must be construed in the light most favorable to the nonmovant on summary judgment. *See Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013). Unless a petitioner can rebut the § 2254(e)(1) presumption by clear and convincing evidence, the federal district court will accept the state court's factual findings as correct. *See Austin*, 647 F. App'x at 482 & n.11.

## IV. ANALYSIS

Petitioner previously presented each of the claims in the instant Petition in his state habeas petition. (Dkt. No. 1 at 6–9; Dkt. No. 34-44 at 20–40). Although the CCA denied his state habeas petition without a written order, Petitioner does not argue and has not shown that the denial was based on procedural grounds. Thus, each of his claims has already been adjudicated on its merits, and the decision of the state court is entitled to this Court's deference. *Richter*, 562 U.S. at 98–99; *see Low v. Thaler*, Civil Action No. H-10-4637, 2011 WL 1376768, at *3 (S.D. Tex. Apr. 12, 2011) ("Even though the denial of petitioner's application does not contain a written opinion, such denial under state law is an adjudication on the merits and therefore, entitled to AEDPA's deference."). Accordingly, Petitioner will be entitled to relief only if he demonstrates that the CCA's determination is contrary to federal law or unreasonable in light of the evidence. 28 U.S.C. §§ 2254(d)(1)–(2). Because he has not made such a showing for any of his claims and has not rebutted the presumption that

the state court's factual findings are correct, his petition should be denied and Respondent's motion for summary judgment should be granted.

**A. Claim One: Petitioner was tried by an unbiased and impartial jury.**

In his first claim, Petitioner levies both generic and specific attacks alleging the jury was biased and partial. Generally, Petitioner alleges that he was deprived of his constitutional right to a fair and impartial jury due to the presence of jurors with backgrounds in law enforcement or familial relationships with law enforcement officers. (Dkt. No. 2 at 21–28.) In Petitioner's view, the trial court erred by permitting these jurors to remain on the panel, despite the fact that Petitioner did not move to strike them peremptorily. (*Id.* at 22).

### 1. *The trial court performed its duty to ensure a fair and impartial jury.*

The Sixth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, guarantees the right to trial by an impartial jury. *Parker v. Gladden*, 385 U.S. 363, 364 (1966). In guaranteeing that right, state courts must afford parties deference in jury selection and trial strategy. Courts do not have an obligation to *sua sponte* dismiss purportedly biased jurors. As the Fifth Circuit has observed:

> This amounts to asking whether the judge has an obligation to dismiss a juror for cause even if no lawyer objects. . . . The Supreme Court has never announced such a rule, and so it is not a ground upon which a state prisoner can obtain relief in a federal habeas corpus proceeding. . . . The absence of a case in the Supreme Court (or any other court, as far as we know) declaring such a rule is not surprising. There is nothing suspicious about a lawyer's refusing to strike a prospective juror for cause. The lawyer might feel that on balance the juror was more likely to vote for than against his client. . . . A rule requiring the judge to exercise all challenges for cause would not serve criminal defendants and is hardly a plausible interpretation of the Sixth Amendment, let alone one endorsed by any decision of the Supreme Court.

*Washington v. Thaler*, 714 F.3d 352, 355 (5th Cir. 2013) (quoting *Cage v. McCaughtry*, 305 F.3d 625, 626 (7th Cir. 2002)).

If Petitioner believed any of the potential jurors held improper biases, he should have

moved to strike them.  *Id.*  However, Petitioner did not make a single challenge for cause, even when prompted by the trial court:

> COURT: . . . So now at this point, are there any other challenges for cause? Cause means that it's someone who cannot be fair and impartial for one reason or another.  We can call them up here.  I don't think anyone has said that, other than these two people, unless you have some notes on that.
>
> PETITIONER: I didn't have the name.  I took a few notes when he was doing this.
>
> COURT: Well, a challenge for cause is someone who says he or she cannot be fair.  I pointed out three that I've seen.
>
> PETITIONER: Okay.
>
> COURT: Now, unless you have any others, then --
>
> PETITIONER: I didn't really have the opportunity to take notes.
>
> COURT: But do you know anyone based on the responses?  I'm asking you now.
>
> PETITIONER: None that I can think of.  None that my memory recalls at the moment.

(Dkt. No. 34-25 at 135:25–136:19).  Instead of raising for-cause challenges, Petitioner offered a generic attack against the panel, as he continues to do now:

> PETITIONER:  If I could just point out a concern that I'm having.  The amount of people that are here in this jury that are involved in law enforcement or whathaveyou is overwhelming.  I mean, wow, what are the odds of that happening by chance?

(*Id.* at 134:21–25).  Moreover, Petitioner chose not to exhaust his peremptory strikes, using only seven of his allotted ten.  (*Id.* at 144:25–145:1).

Because Petitioner chose not to challenge any jurors for cause or exhaust his remaining peremptory strikes, his claim is essentially that the trial court should have *sua sponte* struck jurors that he now perceives to have been biased.  As discussed above, the trial court had no such obligation.  *Washington*, 714 F.3d at 355.  Thus, any deficiencies in the composition of the jury resulted not from a failure by the trial court but from Petitioner's own choices.  Accordingly, the trial court's deference to Petitioner's trial strategy did not deprive

him of his constitutional right to a fair and impartial jury.

### 2. *Petitioner's allegation of institutional impropriety is unsubstantiated.*

Petitioner further contends that he was tried by a biased and partial jury because the officer charged with summoning the venire corruptly constructed a panel filled with people associated with law enforcement, thus forcing Petitioner to accept a jury with an implicit bias against him. (Dkt. No. 2 at 21–22). Petitioner offers no evidence to substantiate this allegation; instead, he relies on his own demographic perceptions to claim that too many people with law enforcement connections were on the panel. (*Id.* at 20). However, a relationship with law enforcement does not render a potential juror *per se* biased. *See Andrews v. Collins*, 21 F.3d 612, 620 nn.11–12 (5th Cir. 1994). Rather, "[w]here a party seeks to exclude a venire member because of bias, that party must demonstrate through questioning that the potential juror lacks impartiality." *Fuller v. Johnson*, 114 F.3d 491, 499–500 (5th Cir. 1997) (citing *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)). The mere presence of persons related to law enforcement does not render individuals unfit for jury service.[1]

### 3. *Petitioner has not shown that individual jurors were demonstrably impartial.*

Petitioner accuses five individual jurors of impartiality based on their jury questionnaires and responses to questioning during voir dire. "The Supreme Court has held that whether an individual juror is disqualified on account of bias is a question of fact." *Caldwell v. Thaler*, 770 F. Supp. 2d 849, 870 (S.D. Tex. 2011) (citing *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)). Further, "[d]eference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a

---

[1] The new, similar argument Petitioner raises in his Response regarding employees of Laredo's United Independent School District is meritless for the same reasons. (Dkt. No. 35 at 12–13).

factor of critical importance in assessing the attitude and qualifications of potential jurors." *Id.* (quoting *Uttecht v. Brown*, 551 U.S. 1, 9 (2007)).

### a) *Juror Number 5 – Martha Rodriguez*

Petitioner argues that Ms. Rodriguez was impermissibly biased because she failed to disclose that Officer Marcos Gonzalez, chief investigator and a witness in the case, was her brother.[2] (Dkt. No. 2 at 23). Petitioner already presented this argument in his state habeas petition, first claiming only that Ms. Rodriguez was "directly related" to Officer Rodriguez, (Dkt. No. 34-44 at 26), then amending this allegation to state that she is his sister, (Dkt. No. 34-43 at 10). Petitioner correctly states in his brief that if this allegation were true, Ms. Rodriguez's silence during voir dire about her preexisting relationship with Officer Rodriguez would indeed warrant relief. *See United States v. Scott*, 854 F.2d 697, 699 (5th Cir. 1988) (granting motion for new trial where a juror failed to disclose that he was the brother of a deputy sheriff whose office was involved in the case).

However, that factual matter has already been reviewed and adjudicated by the appropriate state court, which found Petitioner's claim unproven and not warranting relief. (Dkt. No. 34-32). To obtain relief here, Petitioner must show that this determination by the state court was an unreasonable application of law or fact. The only evidence he offers is his opinion that the signatures of Ms. Rodriguez and Officer Rodriguez are similar, thus proving their blood relationship. (Dkt. No. 35 at 10–11). That does not meet the high burden of "clear and convincing evidence" necessary to rebut the finding of the state court. *See Austin*, 647

---

[2] Petitioner also notes that Ms. Rodriguez is married to a police officer. (Dkt. No. 2 at 23). However, he does not claim that Ms. Rodriguez concealed this fact—in fact, he acknowledges that she disclosed the marriage on her juror card—and does not expressly argue that her marital relationship should have disqualified her as a juror. In any case, as discussed above, a relationship with a law enforcement officer does not automatically disqualify a potential juror. *See Andrews*, 21 F.3d at 620 nn.11–12.

F. App'x at 482 & n.11. Accordingly, Petitioner is not entitled to relief.

### b) *Juror Number 6 – Carlos Adan*

Petitioner contends that Mr. Adan[3] was unfit for jury service because his work as a Laredo Police Officer made him familiar with witnesses, court personnel, and the legal system. (Dkt. No. 2 at 23). Mr. Adan confirmed multiple times during voir dire that despite this familiarity he could and would remain a fair and impartial juror. (*See, e.g.*, Dkt. No. 34-25 at 47:12–13 ("[Prosecutor]: . . . [Mr. Adan], could you be fair and impartial? [Mr. Adan]: Yes.")). Despite that reassurance, Petitioner asserts that Mr. Adan's familiarity with the prosecution warrants automatic disqualification due to implicit bias, citing *Morales v. State*, 217 S.W.3d 731, 735–36 (Tex. App. 2007). This is a misstatement of the law. In fact, the specific holding he cites was reversed on appeal. *State v. Morales*, 253 S.W.3d 686, 696, 698–99 (Tex. Crim. App. 2008) (en banc). Although a potential juror with a relationship to the prosecution may be subject to a challenge for cause due to implicit bias, the court does not have an affirmative duty to strike that juror from the panel. Indeed, such action might impinge upon the defense's trial strategy. *Id.* Thus, the trial court did not err by permitting Mr. Adan to remain on the panel, particularly given that no party moved to strike him for cause. (Dkt. No. 34-25 at 135:25–136:19).

### c) *Juror Number 9 – Alfredo Vidaurri*

Petitioner argues that Mr. Vidaurri failed to disclose his employment with the Department of Homeland Security during voir dire. (Dkt. No. 2 at 27). Specifically, Petitioner argues that Mr. Vidaurri failed to identify himself as a law enforcement officer when asked. (*Id.*). However, Petitioner did not directly ask whether members of the panel

---

[3] Mr. Adan is also the subject of Petitioner's third claim that the trial court erred by not granting a corrective peremptory strike. This claim is discussed *infra* at pp. 12–13.

worked in law enforcement. Instead, he asked a compound question that the court clarified: "Who will be biased because of the fact that they work for law enforcement or because of the fact that they have a relative who works in law enforcement?" (Dkt. No. 34-25 at 131:19–21). Mr. Vidaurri's failure to respond affirmatively to that question was not a misleading omission as to whether he works in law enforcement but instead a presumably accurate response as to whether he could remain impartial despite his employment. Petitioner's unsubstantiated allegation as to Mr. Vidaurri's honesty during jury selection is therefore not an appropriate ground for relief.

d) *Juror Number 10 – Maria Luiz Manrique*

Ms. Manrique is the wife of one of the state's witnesses, Jose Luis Manrique, a fact disclosed by Ms. Manrique on her juror questionnaire, (Dkt. No. 3 at 10), and verbally during the state's questioning during jury selection, (Dkt. No. 34-25 at 49:21–23). In his Response, Petitioner acknowledges he possessed the juror questionnaires before and during voir dire. (Dkt. No. 35 at 11). Nevertheless, Petitioner did not raise that issue with Ms. Manrique, did not challenge her for cause, and did not use a peremptory challenge on Ms. Manrique. Despite now claiming that he knew nothing of that relationship when she was seated as a juror, Petitioner was undoubtedly present when she audibly disclosed it upon questioning by the state. The trial court was under no obligation to strike her. *Washington*, 714 F.3d at 355.

e) *Juror Number 11 – Irma Laura Davila*

Petitioner argues that Ms. Davila's marriage to a retired Laredo police officer constitutes impermissible bias. (Dkt. No. 2 at 27). Petitioner did not move to strike her during jury selection despite knowledge of that relationship. As discussed above, the trial court had no obligation to remove Ms. Davila from the panel of its own accord. *Washington*, 714 F.3d at 355.

**B. Claims Two, Six, Seven, and Eight: The trial court did not abuse its discretion.**

In claims two, six, seven, and eight, Petitioner alleges four abuses of discretion by the trial court that he believes rendered his trial fundamentally unfair and deprived him of due process. He argues that the trial court erred by (1) failing to correct his missed peremptory strike, (2) admitting falsified video evidence, (3) permitting a witness to testify over Petitioner's objection, and (4) failing to grant Petitioner's motion for a mistrial. (Dkt. No. 1. at 6, 8–9).

To warrant federal habeas relief for abuse of discretion, a trial judge's error must be so extreme as to render the trial fundamentally unfair. *Bailey v. Procunier*, 744 F.2d 1166, 1169 (5th Cir. 1984). "An error makes a proceeding fundamentally unfair where there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Henderson v. Dretke*, 164 F. App'x 506, 522 (5th Cir. 2006) (internal quotation marks and alterations omitted); *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In other words, a petitioner is not entitled to federal habeas relief unless he can establish that the trial court's error resulted in actual prejudice. *Brecht*, 507 U.S. at 637. Having reviewed the record and the pleadings, the Court concludes that these four claims do not merit relief.

**1. *Claim Two: Failing to correct a missed peremptory strike was not error.***

Petitioner argues that the trial court erred by failing to strike juror Carlos Adan of its own accord, even though Petitioner did not attempt to strike him. (Dkt. No. 2 at 28–30). Petitioner previously raised this issue in both his initial appeal and his state habeas petition. (Dkt. No. 34-5 at 9). The Texas Fourth Court of Appeals has succinctly summarized the underlying issue:

> The record reveals that after the voir dire examination, each side submitted to the court its list of peremptory strikes, and the court clerk announced the names of the twelve jurors. Once the jurors were seated in the jury box, but before they were sworn, LaFlamme objected to [Adan's] placement on the jury,

stating he had stricken this juror. The trial court reviewed the peremptory strikes of both parties and proclaimed that LaFlamme had exercised only seven of his ten peremptory strikes and did not strike the subject juror. Because LaFlamme had not exercised a peremptory strike on the subject juror, the trial judge denied LaFlamme's request to utilize a peremptory strike after the strike sheets were turned in and the jury was seated.

(*Id.* at 8). Further, the trial court did conduct additional questioning of Adan and found no cause to dismiss him. (Dkt. No. 34-25 at 145:6–18).

Because the Texas Court of Criminal Appeals denied Petitioner's state petition without a written order, the Texas Fourth Court of Appeals issued the "last reasoned opinion" that will be reviewed by this Court to determine if the denial of that claim was an unreasonable application of federal law. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). The Texas Fourth Court of Appeals held that "the record . . . presents no evidence of a mistake in the exercise of LaFlamme's peremptory challenges or in the trial court's seating of the jury members." (Dkt. No. 34-5 at 9). Thus, the trial court found, and the appellate court affirmed, that the Petitioner did not make a "mistake" in issuing his peremptory strikes because he did not identify Adan on his strike sheet. (Dkt. No. 34-25 at 144:11–17). *See Jackson v. State*, 826 S.W.2d 751, 752 (Tex. App. 1992) (holding that the trial judge did not err by failing to remove a juror that the defendant claimed to have listed on his strike sheet where there was "no evidence of a mistake in the exercise of [his] peremptory challenges").

Petitioner has not put forth any new evidence to support his contention that the failure to strike Adan was a fundamental error. The record indicates that he omitted the juror from his strike sheet altogether, (Dkt. No. 34-25 at 144:11–17), which is not a mistake as understood under this analysis. *See Jackson*, 826 S.W.2d at 752. Without proof of an actual mistake, Petitioner has failed to rebut the presumption of correctness of the underlying court decision. Similarly, he has failed to allege that these decisions were contrary to federal law. Accordingly, he is not entitled to relief on this claim.

**2. *Claims Six and Seven: The trial court did not abuse its discretion in admitting video evidence and a toxicology report.***

In claims six and seven, Petitioner alleges that the trial court admitted two pieces of evidence that prejudiced the jury and prevented a fair trial. In claim six, Petitioner argues that an edited video depicting Petitioner on the day of the automobile accident, used by the state to show his intoxication, was falsified and improperly admitted over his objection. (Dkt. No. 2 at 43–45). In claim seven, Petitioner contends that a blood toxicology report was improperly admitted into evidence through a police officer instead of an expert witness. (*Id.* at 47–53).

Neither of these allegations is a cognizable ground for relief. Federal courts "do not sit as a 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Cronnon v. State of Ala.*, 587 F.2d 246, 250 (5th Cir. 1979) (internal citation omitted). When reviewing state court evidentiary rulings on a petition for habeas corpus, a federal court will grant relief only when the state court's error is so egregious as to render the entire trial fundamentally unfair. *Jernigan v. Collins*, 980 F.2d 292, 299 (5th Cir. 1992); *see Guidroz v. Lynaugh*, 852 F.2d 832, 835 (5th Cir. 1988) (explaining that an error renders a trial fundamentally unfair only where "there is a reasonable probability that the verdict might have been different had the trial been properly conducted"). Moreover, the challenged evidence must have been "a crucial, critical, or highly significant factor in the context of the entire trial." *Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir. 1987); *see Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988).

a) *Claim Six*

Petitioner objects to the admission of a video depicting him at the scene of the accident, arguing that it was highly prejudicial, edited for dramatic effect, not evidence, manufactured several years after the incident, and spliced together from multiple videos.

(Dkt. No. 2 at 44–46). The Court finds that the admission of this video did not swing the verdict in this case. Instead, it was simply one item out of many pieces of evidence offered to show Petitioner's intoxication. Police eyewitnesses trained to detect intoxication testified that his behavior at the scene indicated intoxication. Officer Jesus Gonzalez testified that he could not administer a field sobriety test, despite witnessing signs of intoxication, for fear that Petitioner would hurt himself. (Dkt. No. 34-27 at 32:13–21, 60:17–23). Officer Gonzalez further testified that Petitioner was unresponsive and could not speak. (*Id.* at 65:17–24). Officer Marco Rodriguez testified that Petitioner fell asleep while being questioned about the accident, had bloodshot eyes, and exhibited other behavior typical of intoxication. (*Id.* at 74:8–75:17). Even if the video were improperly admitted, the eyewitness accounts of the officers at the scene obviated the error.

   b) *Claim Seven*

   Petitioner argues that Officer Rodriguez's testimony regarding the blood toxicology report, which was pre-admitted into evidence, was prejudicial in violation of the Fourteenth Amendment because Officer Rodriguez did not have the expertise required to opine on the significance of the report. (Dkt. No. 2 at 47). At trial, the court admitted the report into evidence after the parties stipulated that a forensic scientist would testify as to the significance of its contents. (Dkt. No. 34-26 at 25:13–26:7). When Officer Rodriguez took the stand prior to the testimony of that expert, Petitioner objected. (Dkt. No. 34-27 at 81:21–25). The Court overruled the objection with an instruction to the state to limit its questioning to whether there was a positive result for intoxication without inquiring as to the significance of that result. (*Id.* at 83:16–84:7). Officer Rodriguez's testimony was thus limited on direct examination to the impact of the results—namely, whether the report indicated a positive result for a particular intoxicating substance, which would in turn permit Petitioner's arrest. (*Id.* at 84:10–85:1). Later in the trial, the state's expert, Eduardo Padilla, testified as to the

significance of the results and the methodology used to obtain them. (Dkt. No. 34-28 at 133–140).

The trial court properly limited the scope of Officer Rodriguez's testimony. Pursuant to the court's instructions, he did not attempt to explain any technical aspects of the report or the underlying testing. Instead, he simply testified on direct examination as to how the positive indication in the report permitted him to complete his investigation. (Dkt. No. 34-27 at 84:22–85:9). Petitioner's claim therefore fails.

### 3. *Claim Eight: Denial of Petitioner's motions for new trial is not grounds for relief.*

For the denial of a motion for a new trial to warrant habeas relief, a petitioner must "show that the state court's denial of his motion . . . constituted a violation of a[] constitutional right." *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991); *see Haygood v. Quarterman*, 239 F. App'x 39, 42 (5th Cir. 2007) (noting that federal courts do not review state courts' interpretation of state procedural law in federal habeas proceedings). Petitioner has made no showing of a constitutional violation. He merely reiterates the grounds on which he moved for a new trial without alleging any violation of a constitutional right. Accordingly, Petitioner is not entitled to relief on this claim.

### C. **Claim Three: Petitioner's insufficient-evidence claim is meritless and unexhausted.**

Petitioner has not exhausted his claim that the state failed to present evidence sufficient to prove the intoxication element of his intoxication assault conviction. Under § 2254, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the [petitioner] has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); *see Morris v. Dretke*, 413 F.3d 484, 490 (5th Cir. 2005). The exhaustion requirement is satisfied if the habeas petitioner has presented his claims to the highest state

court, either on direct appeal or in post-conviction collateral proceedings. *Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004). In Texas, the highest court with criminal jurisdiction is the Court of Criminal Appeals. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). Thus, a habeas petitioner in Texas may exhaust available state remedies by presenting his claims to the CCA by (1) making a direct appeal to the intermediate state court of appeals and then filing a petition for discretionary review with the CCA or (2) filing with the convicting court a state habeas petition, which will be forwarded to the CCA. *Dickinson v. Texas*, 2008 WL 828054, at *2 (S.D. Tex. Mar. 27, 2008) (citing Tex. Code Crim. Proc. art. 11.07 § 3(c)).

Under Texas law, sufficiency of the evidence is not cognizable in a post-conviction state habeas proceeding. *See Ex parte Easter*, 615 S.W.2d 719, 721 (Tex. Crim. App. 1981) (en banc) (citing *Ex parte Smith*, 571 S.W.2d 22, 23 (Tex. Crim. App. 1978)). Thus, Petitioner could only have obtained CCA review of his insufficiency claim on direct appeal. *West v. Johnson*, 92 F.3d 1385, 1398 n.18 (5th Cir. 1996). However, he failed to raise this claim in his direct appeal, instead presenting it for the first time in his state habeas petition. (Dkt. No. 34-44 at 29–30). By denying that petition without written order, the Court of Criminal Appeals determined that the claim was procedurally barred and not cognizable. *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004); *see Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Petitioner has deprived the proper reviewing court of the opportunity to remedy any constitutional errors by seeking habeas relief without first presenting the claim to the appropriate state appellate court.

Nevertheless, the Court may review the merits of that unexhausted claim if Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice." *Coleman*, 501 U.S. at 750. First, Petitioner has shown neither cause for his failure to assert his insufficiency claim on direct review nor resulting prejudice. Second, the "miscarriage of justice" exception is confined to cases of actual innocence where the petitioner shows "with new, reliable evidence that was not presented at trial" that he did not commit the crime of conviction. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999). Again, Petitioner has made no such showing. He presents no evidence of actual innocence, instead merely rehashing prior arguments about the evidence already presented at trial. (Dkt. No. 2 at 34–38). Because neither exception to the exhaustion requirement applies, Petitioner's insufficient-evidence claim is barred.

### D. Claim Four: Amending the grand jury indictment was not improper.

Petitioner claims that his right to due process was violated when the state was permitted to amend the indictment to expand the charged intoxicant from alcohol alone to any controlled substance. (Dkt. No. 2 at 39–40; *see* Dkt. No. 34-44 at 6, 8). However, the statute under which Petitioner was convicted, Texas Penal Code § 49.07, is not limited in scope to alcohol intoxication; rather, it prohibits assault by a person under the influence of any drug or controlled substance. *See* Tex. Penal Code § 49.01(2). Moreover, Texas law makes clear that indictments may be amended upon notice to the defendant at any time before trial begins. Tex. Code Crim. Proc. art. 28.10(a). In this case, Defendant had notice of the amended indictment four months before trial. (Dkt. No. 34-44 at 6, 8). The application of the Texas procedural rule does not violate any clearly established constitutional right. *See Smith v. State*, 20 S.W.3d 827, 828 (Tex. App. 2000).

### E. Claim Five: Witness failures to bring evidence to trial are not grounds for relief.

Petitioner next argues that police-officer witnesses failed to produce documents and videos responsive to trial subpoenas duces tecum, thereby depriving him of due process. (Dkt.

No. 2 at 41–43). Where, as here, a petitioner does not identify any specific constitutional right incorporated into the Fourteenth Amendment by the Due Process Clause, "due process is violated only if the court's action denie[d the petitioner] a fundamentally fair trial." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 278 (5th Cir. 1985). "The test applied to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Id.* at 278–79. If a witness fails to bring items to trial in response to a subpoena, habeas relief will not be warranted so long as the defendant had the ability confront the witness and present a full defense through cross-examination. *See Rice v. Quarterman*, No. CIV. A. H-06-2051, 2008 WL 4425560, at *14 (S.D. Tex. Sept. 30, 2008). Having reviewed the record, the Court finds that even if the witnesses had brought all available documents and video requested in the subpoenas, the verdict would not have changed. Accordingly, Petitioner is not entitled to relief on this claim.

### 1. *Sergeant Steven Gomez*

Petitioner argues that he was denied a fair trial because Sergeant Steven Gomez failed to bring written policies and procedures of the Laredo Police Department to trial as requested in Petitioner's trial subpoena. (Dkt. No. 2 at 41). Nevertheless, Petitioner obtained a copy of those materials on his own and was able to question Sgt. Gomez about them on cross-examination. (Dkt. No. 34-26 at 148:8–152:21). Any prejudice that might have been caused by Sgt. Gomez's failure to bring the materials with him to trial was therefore remedied.

### 2. *Officer Jesus Gonzalez*

Next, Petitioner claims that Officer Jesus Gonzalez failed to bring dashboard and body camera videos to trial in compliance with his subpoena. (Dkt. No. 2 at 41–42). However, Officer Gonzalez testified that he did not save the dash-cam footage from the incident because

it did not capture any pertinent information. (Dkt. No. 34-27 at 34:5–21). Officer Gonzalez had no obligation to produce video that no longer existed. Further, Petitioner was still able to cross-examine Officer Gonzalez about his training, what was on the footage, how and why footage is saved, and the policies and procedures pertaining to footage. (*Id.* at 37:2–45:10). Having been afforded the opportunity to present a full defense through cross-examination, Petitioner was not deprived of a fair trial by any deficiency in Officer Gonzalez's response to the subpoena.

### 3. *Officer Marco Rodriguez*

Third, Petitioner points out that Officer Marco Rodriguez did not bring any items responsive to the subpoena when he testified. (Dkt. No. 2 at 42). Indeed, Officer Rodriguez confirmed this fact at trial:

> Q. Okay. Did you bring your -- Let me backtrack. Did you receive a subpoena from the defense?
>
> A. Yes, yes, this morning.
>
> Q. The subpoena duces tecum, I believe? And what did that subpoena ask you to bring today?
>
> A. From the prosecution or the defense?
>
> Q. From the defense.
>
> A. It said that I needed to bring documents, but I was already at the time so I wasn't able to go because I was already here at the court.
>
> Q. So you didn't bring any documents?
>
> A. Correct.

(Dkt. No. 34-27 at 91:7–18). However, as with the other officers, Petitioner was still able to fully cross-examine Rodriguez. *See Rice*, 2008 WL 4425560, at *14. Moreover, Petitioner does not identify any prejudice that might have resulted from Officer Rodriguez's failure to respond to Petitioner's subpoena. Accordingly, this claim does not warrant relief.

O

#### 4. *Officer Charles Rosales*

Lastly, Petitioner argues that Officer Charles Rosales disregarded Petitioner's subpoena when he failed to bring footage from his patrol vehicle that would have shown Petitioner's activity within the police vehicle as he was transported from the accident scene to the hospital. (Dkt. No. 2 at 42). But as Petitioner acknowledges in his memorandum, Officer Rosales testified that he did not actually record the activity. (*Id.*; Dkt. No. 34-27 at 190:9 ("No. The camera was not activated.")). Like Officer Gonzalez, Officer Rosales had no obligation to produce an item that did not exist. Further, Petitioner cross-examined Officer Rosales on why he did not record the transport. (Dkt. No. 34-27 at 190:10–17). Again, Petitioner was not prevented from confronting this witness and presenting a full defense.

### V. Petitioner's Outstanding Motions are Moot.

In addition to the instant Petition, Petitioner has four outstanding motions: Motion for Funding to Secure Investigative Assistance, (Dkt. No. 6), Motion for Investigation, (Dkt. No. 9), and two Requests for Evidentiary Hearings. (Dkt. Nos. 17, 27). Those motions seek, generally, to investigate whether the video evidence addressed in claim six was falsified. However, they are now moot because the Court has concluded that Petitioner's § 2254 petition must be dismissed. *See, e.g., Rojas v. Stephens*, No. 2:13-CV-337, 2014 WL 2118020, at *2 (S.D. Tex. May 21, 2014) (denying a petitioner's motion for discovery as moot after dismissing the underlying § 2254 petition with prejudice).

### VI. Conclusion

For the foregoing reasons, Respondent's Motion for Summary Judgment (Dkt. No. 33) is hereby **GRANTED**. Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is **DENIED**, and this civil action is **DISMISSED WITH PREJUDICE**. Petitioner's remaining motions (Dkt. Nos. 6, 9, 17, 27) are **DENIED** as **MOOT**.

It is so **ORDERED**.

**SIGNED** May 10, 2019.

Marina Garcia Marmolejo
United States District Judge